Ronald L. AARON, et al., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

The CITY OF WICHITA, KANSAS, Defendant.

No. 90–1536–K.

United States District Court, D. Kansas.

June 17, 1992.

Ronald D. Innes, Charles W. Harris, Curfman, Harris, Rose & Weltz, Wichita, Kan., for plaintiffs.

Richard D. Ewy and Gloria G. Flentje, Foulston & Siefkin, Gary Rebenstorf, City Atty., Wichita, Kan., for defendant.

**900**

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

This is an action by current and former fire fighters of the Operations/Fire Suppression Division of the Wichita Fire Department against the City of Wichita (City) for unpaid compensation, unpaid overtime compensation, liquidated damages and attorney fees. In their motion for partial summary judgment, plaintiffs contend the City has violated the requirements of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by failing to compensate them for all hours worked, by using an artificial hourly rate as the regular rate for the purpose of computing straight time and overtime compensation, and by classifying those plaintiffs with the ranks of fire captain, fire battalion chief, and division fire chief as executive employees who are exempt from the overtime requirements of the FLSA. Plaintiffs also allege a willful violation of the FLSA. In its motion for summary judgment, the City argues that plaintiffs' claims are barred by the statute of limitations, that plaintiffs were fully compensated for every hour worked, that plaintiffs' regular rate of pay was properly calculated, and that the fire captains, battalion chiefs and division chiefs were executive employees and therefore properly excluded from the FLSA overtime requirements.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must resolve all disputed facts in favor of the party resisting summary judgment. *White v. General Motors Corp., Inc.,* 908 F.2d 669, 670 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Summary judgment shall be denied if the moving party fails to demonstrate its entitlement beyond a reasonable doubt. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir. 1980).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). In resisting a motion for summary judgment, the nonmoving party may not rely upon mere allegations, or denials, contained in its pleadings or briefs. Rather, the party must come forward with specific facts showing the presence of a genuine issue for trial. *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230 (10th Cir. 1990). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

A hearing on the motions was held on May 28, 1992. The court now makes the following findings of fact and conclusions of law. For the reasons stated herein, plaintiffs' motion for partial summary judgment is granted in part and denied in part. Further, the City's motion for summary judgment is granted in part and denied in part.

### Issue One

The City's fire department has three major divisions: an administrative division, an operations division and a fire prevention division. Plaintiffs are, or have been, employed by the City as fire suppression officers in the operations division of the fire department.

Plaintiffs are, or have been, members of the International Association of Fire Fighters (IAFF). Fire fighters represented by the IAFF are in the pay classifications of 721, 722 and 724, and hold the job titles of fire recruits, fire fighters, fire lieutenants,

fire prevention inspectors I, fire prevention training instructors I, and fire investigators I. Excluded from the bargaining unit are fire personnel officers holding the rank of fire captain or above. Compensation and other work-related conditions of the fire personnel represented by the IAFF have been determined by a bargained-for Memorandum of Agreement (MOA) which has been negotiated between the City and the IAFF each year until 1991.

In each of the negotiated agreements from 1987 through 1990, the pay schedule for fire recruits, fire fighters and fire lieutenants was detailed as an hourly rate. Also evident from the agreements and schedules are the biweekly rates of pay. Employees of the operations division work shifts of 24 hours on duty followed by 48 hours off duty. Accordingly, an operations officer who works every third day as scheduled works an average of 56 hours per week or 2,912 hours annually. In contrast, fire fighters assigned to the administrative and prevention divisions work a 40–hour week or 2,080 hours annually.

Under the applicable MOAs, operations division personnel who worked an average 56–hour week were compensated at the same biweekly and annual rates as the fire prevention division personnel in the same grade and step. None of the MOAs between the City and the IAFF distinguished between the base compensation of employees who worked 56 hours a week and those who worked 40 hours per week. It is this pay differential between 56–hour employees and 40–hour employees which is the basis for the plaintiffs' first claim.

Plaintiffs assert that the City has violated the requirements of the FLSA by not compensating them for every hour worked during each of the 24–hour tours of duty per pay period. Plaintiffs' argument is premised on the fact that the base compensation for operations officers was not adjusted upon the effective date of the FLSA in 1986. They assert that prior to 1986 all hours on duty were not considered hours worked because of the non or low productivity of some of the hours. Thus, since operations officers spent time sleeping, eat-ing and waiting while on duty, they were compensated at the same rate as 40–hour a week employees. Plaintiffs conclude, therefore, that they have been compensated for only 40 hours of work, not 56 hours. Accordingly, plaintiffs argue that the City's failure to adjust this pay policy upon enactment of the FLSA, except for annual adjustments applied to all employees, violates the FLSA requirement that the City compensate the fire fighters for every hour worked.

■ The first aspect of this issue which the court addresses is the City's assertion that plaintiffs' claim is barred by the applicable statute of limitations. The statute of limitations governing FLSA claims provides for a two-year limitation period in most circumstances and a three-year limitation period for willful violations. 29 U.S.C. § 255(a).

In *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 *reh'g denied*, 471 U.S.1049, 105 S.Ct. 2041, 85 L.Ed.2d 340 (1985), the Supreme Court held that municipalities were subject to the FLSA. Congress responded by amending the FLSA to delay enforcement against state and local governments until April 16, 1986. *Hendrix v. City of Yazoo City, Miss.*, 911 F.2d 1102, 1103 (5th Cir.1990). The City argues that any alleged violation of the compensation provisions of the FLSA occurred on April 16, 1986, the effective date of the FLSA. Under the City's argument, plaintiffs' action, filed on November 14, 1990, is outside the applicable statute of limitations. Plaintiffs argue that the statute of limitations has not run because the City's continued course of conduct has resulted in noncompliance with the FLSA, and each repetitive nonpayment for hours worked constitutes a new cause of action.

■ The continuing violation doctrine applies in two situations: when the original violation is outside the statute of limitations but closely related to other violations that are not time barred, and when the initial violation outside the statute of limitations is repeated at a later date. *Hendrix*, 911 F.2d at 1103. In the first in-

stance, recovery is allowed for all violations, while in the second case each violation begins the statute of limitations anew and recovery is limited to those violations that occur within the period of limitations. *Id.*

In *Hendrix,* Yazoo City reduced the base salary of its fire fighters in order to ameliorate the effects of the FLSA requirements. 911 F.2d at 1103. The fire fighters did not bring their action against the city until three years and one month had passed. *Id.* In determining whether the reduction constituted a single violation barred by the statute of limitations, or whether each affected paycheck constituted a violation, the court examined the practice at issue to see if it was part of a past discriminatory act or whether it was facially neutral and merely gave effect to a prior act of discrimination. *Id.* at 1104. The *Hendrix* court noted that the plaintiffs were fully aware of the reduction in their base rate of pay when they received their April 16, 1986 paychecks. *Id.* at 1105. It concluded that the reduction in pay was the violation and the subsequent paychecks simply gave continued effect in a facially neutral manner. Thus, there was no continuing violation and the action was barred by the statute of limitations. *Id.*

In contrast, the court in *Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261 (5th Cir.), *modified,* 826 F.2d 2 (1987), found that the defendant's failure to compensate plaintiff in accordance with the FLSA provisions constituted a continuing violation. Therein, the court held that a separate cause of action accrued at each regular payday immediately following the work period for which the services were rendered and for which the wage or overtime compensation was claimed. *Id.* at 271. This conclusion was based upon the rationale that any other holding would permit perpetual wage discrimination by an employer whose violations had already lasted two years without attack. *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973); *see also Jenkins v. Home Ins. Co.,* 635 F.2d 310 (4th Cir.1980) (discriminatory lower payment every two weeks constituted continuing violation that ceased only at end of plaintiff's employment).

This court believes the reasoning of *Hodgson v. Behrens Drug Co.* and its prodigy is the appropriate rationale for determining whether a continuing alleged violation occurred in the present case. Although the facts reveal that plaintiffs were aware, or should have been aware, of the City's alleged compensation violation in April, 1986, their claim is not barred by the statute of limitations. Plaintiffs have shown that the alleged compensation violation was a continuing policy and practice of the City which resulted in a series of alleged violative acts. Thus, each paycheck which perpetuated the original alleged violation constituted a new cause of action. To find otherwise would allow the City to continue with its alleged violations of the FLSA.

In addition, the City contends that plaintiffs' claim for unpaid hours does not relate back to the date the suit was originally filed, November 14, 1990. It asserts that plaintiffs did not raise any form of an unpaid hours claim until August 19, 1991, and that plaintiffs' present claim did not appear until December 23, 1991, in their third amended complaint.

Upon examination of the pleadings, this court agrees with the City that no mention of the unpaid hours claim appeared in any form of the plaintiffs' original complaint. Accordingly, the applicable statute of limitations bars recovery for any alleged violations of the FLSA by the City for unpaid hours which occurred prior to August 19, 1989. The court notes, however, that the issue presented is moot in light of the conclusion discussed below. In accordance with the court's determination that each paycheck received by plaintiffs constituted a new cause of action for the alleged violation of the FLSA, plaintiffs are entitled to recover for any violations which occurred in the two years preceding August 19, 1989. The issue of willfulness and the extension of the statute of limitations for that reason is discussed below.

■ As for the substantive issue of count one of plaintiffs' complaint, the City does not deny that it is statutorily required to compensate its employees for all hours worked. It argues, however, that the MOAs entered into between the IAAF and the City since 1977 provide evidence that plaintiffs were paid an hourly rate for 56 hours per week. The City asserts that plaintiffs were paid for every hour worked and received overtime compensation in accordance with the FLSA for those hours worked in excess of 204 hours each pay period. The City does not deny that operations officers and 40–hour–a–week officers received the same annual and biweekly rates of compensation. However, it contends that this fact merely shows the plaintiffs were paid a lower hourly rate than other fire fighters. The City asserts that the variance in the hourly rates of compensation between operations officers and other officers is attributable to the different functions performed by the employees. The City recognizes that operations officers are on duty during periods of low productivity; therefore, these employees receive a lower hourly rate of compensation than the 40–hour–a–week officers who are expected to work at a higher level of productivity during their hours on duty.

Plaintiffs' claim that they are not compensated for every hour worked is without merit. The FLSA does not require an equal rate of compensation between the operations officers and other officers in the fire department. Thus, it is clear that plaintiffs, who work more hours in a week than other fire department officers, but who receive the same annual and biweekly compensation as the other officers, receive a lower hourly rate of compensation. *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682 *reh'g denied*, 317 U.S. 706, 63 S.Ct. 76, 87 L.Ed. 563 (1942). As long as plaintiffs' hourly wage meets the minimum wage requirements, there is no violation of the FLSA. Plaintiffs' argument that the City failed to adjust its compensation plan upon enactment of the FLSA infers that an upward adjustment was required. However, no adjustment was required where the existing pay plan complied with the FLSA requirements.

In addition, the court looks to the effective MOAs to determine whether plaintiffs were compensated for all hours worked. The MOAs show that plaintiffs were entitled to overtime compensation for all hours worked over their regular schedule, thereby indicating that plaintiffs were paid for every hour worked. The main thrust of plaintiffs' argument is that operations fire fighters were not regularly scheduled to work 56–hour weeks but only 54 hours per week due to four compensated days off each year. This argument, however, discredits plaintiffs' own assertions and is relevant only in association with the computation of the regular rate of compensation and overtime compensation. The facts presented to this court establish that plaintiffs agreed to work an average 56–hour week and have been compensated for every hour worked. The court finds that the amount of compensation paid to the operations fire fighters is a matter for negotiation between the fire fighters' union representatives and the City, so long as the rate of compensation complies with the FLSA minimum requirements. Accordingly, summary judgment is granted in favor of the City.

### Issue Two

In plaintiffs' third claim, they assert the City has used an artificial regular rate for computing base and overtime compensation, thereby understating the amount of compensation due.

Because of the unique concept of "tour of duty" under which fire fighters are employed, Congress created an exception to the usual "hours of work" rules applied in the determination of overtime compensation. Under 29 U.S.C. § 207(k)(2), a fire fighter who works 24–hour tours of duty in a 27–day work period is entitled to overtime compensation at one and one-half times the regular rate at which he is employed for all hours worked over 204 hours in the pay period. *See,* 29 C.F.R. § 553.-230(c).

■ The regular rate at which an employee is employed includes all remuneration for employment paid to, or on behalf of, the employee, except payments specifically excluded by statute. 29 U.S.C. § 207(e). The regular rate is the hourly rate actually paid to the employee for the normal, nonovertime work week for which he is employed. *149 Madison Ave. Corp. v. Asselta,* 331 U.S. 199, 204, 67 S.Ct. 1178, 1181, 91 L.Ed. 1432 *modified,* 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947); *Walling v. Helmerich & Payne,* 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944). The regular rate is a rate per hour, although the FLSA does not require employers to compensate employees on an hourly basis. 29 C.F.R. § 778.109. If the employee is employed solely on the basis of a single hourly rate, the hourly rate is his regular rate. 29 C.F.R. § 778.110. If the employee is employed on a salary basis, however, his regular hourly rate of pay is computed by dividing the salary by the number of hours for which the salary is intended to compensate. 29 C.F.R. § 778.113.

■ With these requirements in mind, the court examines the method and manner of calculation utilized by the City to compute the plaintiffs' regular rate, and plaintiffs' assertions that such method is improper.

In order to calculate the regular hourly rate of operations officers, the City divides each plaintiff's annual compensation by 2,912 (56 hours × 52 weeks), the number of hours worked annually. The regular hourly rate determined by this method is the same hourly rate listed in the pay schedules of the relevant MOAs.

Plaintiffs contend that the divisor of 2,912 is an inflated number of hours worked because it includes overtime hours and hours attributable to Kelly days and vacation days.

The court first considers plaintiffs' contention that overtime hours are included in the computation of plaintiffs' regular hourly rate. Plaintiffs argue that an operations officer who works all nine shifts of 24 hours each in a 27-day pay period works a total of 216 hours. However, since the

MOAs and FLSA require overtime compensation for all hours worked over 204 hours, there are 12 overtime hours in each pay period. 12 overtime hours in each pay period constitute 162 overtime hours annually. Plaintiffs urge that the 162 hours of overtime should be deducted from the hours worked divisor so that the annual salary is divided by 2,750 hours rather than 2,912 hours.

The court finds merit in plaintiffs' argument. In *149 Madison Ave. Corp. v. Asselta,* 331 U.S. 199, 204, 67 S.Ct. 1178, 1181, 91 L.Ed. 1432 (1946), the United States Supreme Court declared that the regular rate should be derived from the normal *nonovertime* work week. 331 U.S. at 204. In the instant case, the City's inclusion of the overtime hours in its calculation of plaintiffs' regular rate violates the rule espoused in *Asselta.* Under the City's method of calculation, plaintiffs' regular rate is understated and, correspondingly, the rate of overtime compensation is understated.

■ Next, the court addresses plaintiffs' claim that the inclusion of Kelly hours and vacation hours in the City's calculation of the regular rate understates the regular hourly rate. Plaintiffs assert that the 96 hours which represent Kelly hours should be subtracted from the divisor of 2,912 so that the annual compensation of operations officers would be divided by 2,816 hours.

A Kelly day is a 24–hour period which is paid but which the officer does not have to work. Each officer is allowed four Kelly days per year; however, only one Kelly day may be used in a quarter. Evidence submitted indicates the Kelly day policy was adopted by the City in order to keep overtime compensation at a minimum level.

29 U.S.C. § 207(e) provides seven statutory exceptions to the remuneration included in the calculation of an employee's regular rate of pay. Subsection (e)(2) specifically provides that "payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause" shall not be included in an employee's regular rate. In addition,

an employee's regular rate shall not include "extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, ..." 29 U.S.C. § 207(e)(6).

The City apparently believes the mandates of 29 U.S.C. § 207(e) are optional. It argues that instead of excluding the Kelly hours from the calculation of plaintiffs' regular rate, it includes the compensation the Kelly hours represent and then offsets the hours they represent. The City's method, however, credits the compensation for Kelly hours to its overtime compensation liability which is prohibited by the FLSA. 29 C.F.R. § 778.218(a). Under the City's method of calculation, the plaintiffs' regular rate is determined by dividing the annual compensation by the hours worked, including overtime hours, plus the Kelly hours and vacation hours. The City argues that if the Kelly hours are excluded from the calculation of plaintiffs' regular rate, then the compensation which those hours represent must also be excluded from the annual compensation, thereby resulting in the same regular rate as derived from the inclusion of Kelly hours in the present method of computing regular rate.

Upon an in-depth examination of the record, the court concludes that the City has improperly calculated the regular rate of plaintiffs' compensation. The court has already noted that the inclusion of overtime hours in the calculation of regular rate compensation is prohibited. Thus, the divisor representing the annual hours of work must be reduced by 162 hours, the overtime hours represented in the divisor 2,912. In addition, the court finds that the inclusion of Kelly day hours and vacation day hours in the calculation of regular rate is statutorily prohibited. 29 U.S.C. § 207(e)(2). Accordingly, the 96 hours which represent Kelly hours must also be subtracted from the divisor 2,912. Thus, the number of annual hours worked in the computation of plaintiffs' regular rate of pay cannot exceed 2,654. This figure, however, does not account for individual vacation hours which must also be subtracted from the annual hours worked.

It is therefore ordered that the City take the necessary steps to recalculate the plaintiffs' regular rate of compensation in accordance with the method described. The regular rate of compensation of individual plaintiffs shall be computed in the following manner: the annual compensation of individual fire fighters shall be divided by the total number of hours worked (2,912), less overtime hours (162), Kelly hours (96), and variable vacation hours. The City is further ordered to reimburse plaintiffs for straight time hours and overtime hours which were understated and under compensated due to miscalculation of the regular rate of compensation. Summary judgment is granted in favor of the plaintiffs.

### Issue Three

The plaintiffs in claim two of the fourth amended complaint are captains, battalion chiefs, and division chiefs who work in the operations division of the fire department. These plaintiffs claim that the City has violated the overtime compensation requirements of the FLSA by classifying them as executive employees who are exempt from the overtime requirements of the FLSA. 29 U.S.C. § 207(a)(1) and (k)(2). The City denies overtime liability on the basis that these plaintiffs are executive employees and therefore exempt from the overtime requirements. 29 U.S.C. § 213(a)(1).

The basic principles governing exemptions under the FLSA are well settled. The employer has the burden of proving the executive exemption applies and that the employee fits "plainly and unmistakenly within the exemption terms." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 *reh'g denied*, 362 U.S. 945, 80 S.Ct. 803, 4 L.Ed.2d 772 (1960); *Abshire v. County of Kern*, 908 F.2d 483, 486 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). This burden must be satisfied by clear and affirmative evidence. *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir.1984).

In addition, the exemption must be narrowly construed against the employer in order to further Congress' goal of providing broad federal employment protection. *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959); *Abshire*, 908 F.2d at 485.

The FLSA exempts any employee employed in a bona fide executive, administrative, or professional capacity from the overtime requirements of 29 U.S.C. §§ 206 and 207. 29 U.S.C. § 213(a)(1). Federal regulations provide two tests for determining whether an employee qualifies for the executive exemption: the "short" test and the "long" test. 29 C.F.R. § 541.1. (1991).

§ 541.1 provides that a bona fide executive employee shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this subsection ...; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ...: *Provided,* That an employee who is compensated on a salary basis at a rate of not less than $250 per week ..., exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

Under the "long" test, the employer must establish all five elements of the regulation. 29 C.F.R. § 541.1(a) through (e). Under the "short" test, however, the employer need only establish the requirements of subsection (f). Accordingly, the court will first apply the "short" test to determine whether the City has proven by clear and affirmative evidence that the operations division fire captains, fire battalion chiefs, and fire division chiefs are exempt employees under the regulation requirements.

The "short" test requires that an employee: (1) be compensated on a salary basis at a rate of at least $250 per week; (2) whose primary duty is management; and (3) who regularly directs the work of two or more other employees.

■ The first issue upon which the City and exempted plaintiffs disagree is whether the plaintiffs are compensated on a salary basis or an hourly basis. The City must prove that the plaintiffs are paid on a salary basis rather than an hourly rate; otherwise it cannot claim the plaintiffs are executive employees. *Abshire*, 908 F.2d at 486; *Thomas v. County of Fairfax, Va.*, 758 F.Supp. 353 (E.D.Va., 1991); *York v. City of Wichita Falls, Tex.*, 727 F.Supp. 1076, 1082 (N.D.Tex., 1989).

■ Plaintiffs admit that fire captains, fire battalion chiefs, and fire division chiefs are compensated at a rate exceeding $250.00 per week. They deny, however, that they are compensated on a salary basis and assert instead that they are compensated on an hourly basis. In support of their position, the plaintiffs show that the City keeps track of hours worked to an accuracy of $1/10$ of an hour and that pay stubs attached to each pay check are computed on an hourly basis. In addition, these pay stubs showed an hourly rate of pay until March, 1991. Plaintiffs also as-

sert that the receipt of overtime compensation indicates an hourly wage. Finally, plaintiffs argue that the City's past policy of deducting absences of less than a day from vacation, sick leave or other compensatory days supports their contention.

In defense of its pay policy, the City baldly asserts that the captains, battalion chiefs and division chiefs are compensated on a salary basis. It argues that these plaintiffs receive a predetermined portion of their salary every two weeks, and therefore are compensated on a salary basis of no less than $250.00 per week. The City further asserts that these plaintiffs are required to keep track of their hours for the purpose of public accountability and governmental use.

Federal regulation 29 C.F.R. § 541.118(a) (1991) provides guidance in determining whether an employee is compensated on a salary basis. It provides in pertinent part:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed.*

(Emphasis added.)

In *Thomas,* 758 F.Supp. 353, the court examined the compensation pay plan of the defendant county to determine if it unlawfully exempted its fire lieutenants from the FLSA overtime requirements. The *Thomas* court determined that the language of 29 C.F.R. § 451.118(a), relating to variations in work performed, suggested that an employee's pay must not bear a direct causal relationship to the quality or quantity of work performed. *Id.* at 360. Thus, the lieutenants' pay, which varied with each paycheck depending on the number of hours actually scheduled to work, was found to be an hourly wage rather than a salary. *Id.* at 361. Additional factors which the court found indicative of an hourly wage were the fact that the lieuten-

ants' pay was calculated by multiplying the time on the pay stub by the hourly rate, and that the lieutenants received additional compensation at an hourly rate for the hours worked beyond the regular schedule. *Id.* at 364–65.

In the present case, the evidence shows that plaintiffs' pay stubs varied by the number of hours worked in the pay period. This variation in pay indicates the compensation was linked to the number of hours worked. *Abshire,* 908 F.2d at 486 (salaried employee not compensated for amount of time spent on job, but rather for the general value of services performed). In addition, the facts show that plaintiffs received additional compensation, i.e., "premium pay," for overtime hours and holidays which they worked outside of their regularly scheduled hours of duty. Such additional compensation for extra hours worked is not generally consistent with salaried status. *Id.; see Brock v. Claridge Hotel and Casino,* 846 F.2d 180, 184–85 (3d Cir.), *cert. denied,* 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988); *Service Employees Intern. Union, Local 102 v. County of San Diego,* 784 F.Supp. 1503 (S.D.Cal., 1992); *York v. Wichita Falls,* 727 F.Supp. 1076, 1082 (N.D.Tex., 1989) (overtime pay leads to conclusion that employer has treated employees as nonexempt employees). Finally, the court notes that any absence by plaintiffs of less than a day was charged against other compensatory time; however, no pay check was ever reduced by the absence. This reduction of compensatory time for absences from work is as contrary to the notion of salaried status as the docking of base pay. *Id.* at 1510. Consequently, the reduction is one more factor lending itself to the conclusion that plaintiffs were not salaried employees.

For the above reasons, the court finds as a matter of law that plaintiffs are not salaried employees within the meaning of 29 C.F.R. § 541,118(a). The City's failure to meet its burden under the "short" test renders it unnecessary for the court to address the primary duty prong of the regulatory test. The court therefore holds that fire captains, fire battalion chiefs and

fire division chiefs are not salaried employees and thus are not bona fide executives exempt from the provisions of the FLSA. Accordingly, the City is ordered to recalculate the plaintiffs' compensation in accordance with the overtime requirements of the FLSA. Accordingly, summary judgment is granted in favor of the plaintiffs.

### Issue Four

Plaintiffs' fourth claim alleges willful violation of the FLSA by the City in its use of an alleged inflated regular rate for the computation of overtime compensation as fully pled in claim three of plaintiffs' fourth amended complaint. Pursuant to 29 U.S.C. § 255(a), the statute of limitations shall be extended to three years for willful violations of the FLSA. Further, 29 U.S.C. § 216(b) provides that employers who violate § 207 of the FLSA shall be liable for unpaid compensation, unpaid overtime compensation and an additional equal amount in liquidated damages if the violation is deemed willful. A violation is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was permitted by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988).

Plaintiffs allege the City intentionally or with reckless disregard relied upon an inflated hourly rate to determine overtime compensation. In support of their argument, the plaintiffs rely upon the deposition testimony of the assistant personnel director in 1985 who stated that it was not necessary to refer to any regulations regarding the establishment of the regular rate because it was already in the computer. In addition, plaintiffs show that the City was advised by the Department of Labor that its calculation of regular rate was properly calculated prior to July 10, 1985. The Department of Labor opinion letter stated that the regular rate should be determined by excluding the payment for Kelly hours from the 27–day salary and dividing the result by the actual number of hours worked in the work period. The letter further stated that the regular rate could not be based on an artificial number

of hours worked; however, this statement was made in reference to a 19–day work period with 144 scheduled hours. In further support of their position that the City willfully or recklessly violated the FLSA, plaintiffs rely upon the deposition testimony of Ray Trail, assistant city manager, that the City did not seek or rely upon the advise of counsel in adopting its method of calculating plaintiffs' regular rate of compensation. Finally, plaintiffs point to interdepartment memoranda which indicate that the former fire chief had advised the City of problems in its method of calculation and possible resistance by union representatives.

The City, of course, strongly denies plaintiffs' allegations and provides documents and deposition testimony in favor of its position. In particular, the City relies upon the Department of Labor opinion referred to above.

This court has previously found that issues of willfulness and party intent cannot be resolved by summary judgment. *Wahl v. City of Wichita, Kan.*, 725 F.Supp. 1133, 1147 (D.Kan., 1989). In the present case, the innocence or willfulness of the violation of the FLSA asserted in count III of the complaint is controverted by the parties. Examination of the record reflects the controversy evident on whether or not the City acted in a willful or reckless manner in its calculation of plaintiffs' regular rate of compensation. Hence, this court cannot conclude as a matter of law that the City did or did not act in a willful or reckless manner. Accordingly, the intent of the City is an issue which remains to be resolved. Nevertheless, due to the numerous issues of complexity presented in this case, the court will grant, *sua sponte*, a rehearing on the issue of willful violation of the FLSA in order to more fully contemplate the facts and arguments. Accordingly, judgment on the issues of willful violation, extension of the statute of limitations and liquidated damages is suspended until the rehearing has been held.

IT IS THEREFORE ORDERED this 17th day of June, 1992, that plaintiffs' motion for partial summary judgment (Dkt.

No. 40) is granted in part and denied in part.

IT IS FURTHER ORDERED that the City of Wichita's motion for summary judgment (Dkt. No. 39) is granted in part and denied in part.

IT IS FURTHER ORDERED that the City of Wichita shall make a complete and accurate accounting, in consultation with plaintiffs' counsel, of all overtime compensation due each plaintiff subject to the outcome of rehearing or trial on the issue of willfulness.