Janet KLEIN, Plaintiff–Appellee,

v.

RUSH–PRESBYTERIAN–ST. LUKE'S MEDICAL CENTER, Defendant–Appellant.

No. 92–1933.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1992.

Decided March 29, 1993.

Richard J. Tupper (argued), Cornfield & Feldman, Chicago, IL, for plaintiff-appellee.

Bruce R. Alper (argued), Carla Rendina Owen, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendant-appellant.

D. Tyner Brown, Management Ass'n of Illinois, Westchester, IL, for amicus curiae.

Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Plaintiff Janet Klein, a registered nurse, claims that while employed by the defendant Rush–Presbyterian–St. Luke's Medical Center ("Rush") she was entitled to overtime pay for hours worked in excess of forty hours a week under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and the Illinois Minimum Wage Law, Ill. Ann.Stat. ch. 48, para. 1004a (Smith–Hurd 1992). Rush, however, claims that Klein was employed in a professional capacity and was not entitled to overtime pay because she was exempt from the FLSA's and Illinois's overtime requirements. Both parties moved for summary judgment in the district court. Plaintiff's motion was granted in part and denied in part, and defendant's motion was denied.

We must resolve whether Klein is entitled to overtime pay, or if she fits the professional employee exemption. Further, if she is entitled to overtime pay, may Rush use the "window of correction" in the Department of Labor's regulations to avoid liability under the FLSA?[1] We agree with the district court that Klein does not quali-

---

1. The parties stipulated to the amount of damages if Rush is found liable. For the federal overtime claim, Klein is entitled to $2,728.65, which consists of back wages for the two year period before the filing of the complaint. For the state overtime claim, Klein is entitled to $8,185.94, which consists of $4,092.97 in unpaid overtime wages for the three year period before the filing of the complaint and punitive damages in the same amount.

fy as a professional employee within the meaning of the Department of Labor's regulations, though our reasoning is based upon additional factors not considered by the district court. We also do not believe that Rush may use the window of correction. Thus for the reasons given below, we affirm the district court's grant of summary judgment for the plaintiff.

## I. FACTS

Klein worked at Rush as a staff nurse in a locked psychiatric acute care unit for patients with severe psychological disorders from December 1979 until October 1990 when she was fired. She has a bachelor of science in nursing and is certified and licensed to practice nursing in Illinois.

When Klein was hired in 1979, Rush paid Klein and other staff nurses on an hourly basis. Klein punched a time clock and was paid only for hours actually worked. She received overtime for any time, in increments of fifteen minutes, she worked over eight hours a day.

In July 1983, Rush changed its compensation plan which applied to Klein and other staff nurses. Klein no longer punched a time clock but instead prepared handwritten time cards. The nurses were paid biweekly for an expected eighty-hour pay period consisting of ten shifts. Instead of being paid only for hours worked, Klein received a set amount based upon eighty hours of work. This pay would change with any additional hourly premium for evening, weekend, or holiday shifts.

Rush introduced a comp or flex time policy in 1983 to replace the old paid overtime. Now, any hours worked in excess of eight hours on a shift are put in a comp time "bank" as positive comp time. Subject to approval by the unit leader and scheduling demands a nurse may draw on her comp time "bank" for additional time off. If a nurse worked more than four hours extra on a shift, the nurse could choose to be paid for those hours instead of putting them in the comp time bank. Rush changed the four hour requirement to two hours in late 1990. A nurse who works less than eight hours on a shift must use accrued positive comp time or else go into negative comp time to maintain an eighty-hour total for each pay period. The nurses are discouraged from amassing numerous hours of negative comp time. But while a nurse can be paid for extra hours, a nurse's pay is never reduced because of negative comp time. Furthermore, when a nurse leaves Rush, she is compensated for any positive comp time, but is not required to pay back any negative comp time. Klein was subject to the comp time policy like all other nonmanagement employees. Her direct supervisors, the unit leader and assistant unit leader, were not.

Employees also must follow the hospital's Code of Conduct or else they risk being disciplined. The Code of Conduct defines "[s]tandard practices and regulations which all employees are expected to accept and follow as a condition of employment." The rules cover an employee's appearance, identification cards, name tags, personal lockers, telephone calls, and punctuality, as well as more serious offenses like theft, forging documents, assault, and possession of a weapon. An employee is subject to Rush's Disciplinary Procedures for violation of any of the Code's rules; possible discipline includes verbal warnings, written reprimands, suspensions without pay, and discharge.

Klein was subject to the Code of Conduct and Disciplinary Procedures while she worked at Rush and was disciplined several times.[2] From April 23 to October 7, 1984, Klein was on a formal discipline plan for tardiness. If Klein was more than ten minutes late a fourth time after three verbal and written warnings, she would be suspended for one day; if late a fifth time, she would be terminated.[3] She was put on

2. Whether Klein's supervisors were also subject to the Code of Conduct is unclear from the record. Klein's unit leader was apparently responsible for disciplining Klein, and she did so several times.

3. Klein was on this same plan for tardiness in the spring of 1983 before the hospital changed to a comp time system. She was not suspended because she was not late for a fourth time.

a similar plan for behavioral problems. Klein was never suspended in this period. Then on September 27, 1989, Klein was suspended for being rude, abrupt, and irritable to fellow staff members, as well as an incident with a patient's visitor. Klein was paid for one hour of work on September 27, but was not paid for the other seven hours of the suspension. Klein was again suspended on January 31, 1990, for three days, for performance problems, specifically being rude, argumentative, and stomping around the unit, as well as being rude to a patient's son and not assisting another patient who was walking unsteadily. Klein was paid for one and one-half hours of work on January 31, but was not paid for the remaining hours of that shift or the next two days. Klein received a six-day suspension beginning on August 26, 1990, for poor judgment and an unsafe nursing practice when she failed to respond properly to a patient who was causing problems, as well as questioning the amount of medication another patient should receive. Following a series of serious safety problems occurring on September 27, 1990, Klein was suspended on September 28 until she was terminated on October 3, 1990, for job performance and conduct problems.

Throughout her employment at Rush, Klein received regular raises in her salary. Since at least 1986, these raises were given after a merit evaluation. Klein was informed what her percentage of increase was in terms of her hourly rate, her biweekly salary, and her annual salary. In 1988 and 1989, Klein's merit evaluation resulted in 1.5% and 1.715% increases, which was less than half the increase in 1987. In Klein's suspension letters, the unit leader indicated that the merit evaluations resulted in lower raises because of Klein's poor job performance.

Klein filed her complaint on December 27, 1990, to recover unpaid overtime. The case was referred to a magistrate to make a Report and Recommendation. Both parties filed motions for summary judgment in September 1991. In its motion for summary judgment, Rush stated that it was clarifying its Disciplinary Procedures to ensure that exempt employees are not placed on unpaid disciplinary suspension unless for infractions of safety rules of major significance. Rush further promised to compensate Klein for the unpaid suspensions if she requests it or if the court decides the suspensions were impermissible pay deductions.

## II. ANALYSIS

We affirm the district court's grant of summary judgment because we do not find that Klein was a salaried employee within the meaning of the FLSA's exemption for professional employees. The FLSA is a remedial act and exemptions from its coverage are to be narrowly construed against employers. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). Rush's compensation plan for Klein with its comp time policy in combination with its Disciplinary Procedures which subject an employee to unpaid suspension for the employee's tardiness, rude behavior, or even appearance indicate that Klein in fact was not paid on a salaried basis. Rush, moreover, has since changed its disciplinary procedures in order to ensure that exempt employees are subject to unpaid suspension only for infractions of safety rules of major significance. For all of these factors, we affirm the entry of summary judgment since Klein is an employee entitled to overtime under the FLSA and its Illinois counterpart.

### A. *Standard of Review*

We must review the record and the controlling law de novo in the grant of a summary judgment motion. *A.V. Consultants, Inc. v. Barnes,* 978 F.2d 996, 1000 (7th Cir.1992); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990). We can uphold the entry of summary judgment only if the moving party is entitled to judgment as a matter of law, and there is no genuine issue of material fact. *Appley v. West,* 929 F.2d 1176, 1179 (7th Cir.1991). We may affirm summary judgment upon any basis in the record and, therefore, may decide the motion without

deference to the district court's decision. *See Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir.1993); *Owen v. Wangerin*, 985 F.2d 312, 315 (7th Cir.1993).

Summary judgment is made upon the pleadings, depositions, affidavits, and any answers to interrogatories. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party initially shows the court that there is an absence of a question of fact, the nonmoving party has the burden of establishing that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In establishing a factual dispute, the nonmoving party cannot simply rely upon the pleadings, but should offer specific evidence. Fed.R.Civ.P. 56(e). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### B. *The FLSA*

The FLSA forbids an employer from employing any employee "for a workweek longer than forty hours unless such employee receives compensation ... at a rate not less than one and one-half times [his or her] regular rate." 29 U.S.C. § 207(a)(1). But the FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity ... or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] ....)." *Id.* § 213(a)(1). The employer bears the burden of proving the application of an exemption. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974).

The professional employee exemption is defined in the Department of Labor's regulations as the FLSA requires. A professional is an employee whose primary duty requires knowledge of an advance type, consistent exercise of discretion and judgment, and whose work is predominantly intellectual, varied in nature, cannot be standardized in a set period of time, nor requires more than twenty percent of the time to be spent on nonessential and incidental tasks. 29 C.F.R. § 541.3(a)–(d). Finally, a professional is one who is compensated on a salary or fee basis in excess of $280 a week. *Id.* § 541.3(e).

### C. *A Salary Basis*

The only material issue in dispute is whether Klein was paid on a salary basis, there is no question that her position at Rush satisfies the exemption in all other respects. The Department of Labor's regulations define a salaried employee in some detail in the interpretations section to the regulations:

> An employee ... regularly receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of his [or her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.... The employee must receive his [or her] full salary without regard to the number of days or hours worked.

29 C.F.R. § 541.118(a). The salary must be a predetermined amount, and deductions may not be made "for absences occasioned by the employer or by the operating requirements of the business," such as "when work is not available." *Id.* § 541.118(a)(1). Deductions from salary are permissible for absences greater than a day when the employee is absent for personal reasons, *id.* § 541.118(a)(2), or absent for sickness or disability when the employee has no more leave time. *Id.* § 541.118(a)(3). Finally, the interpretations allow for "[p]enalties imposed in good faith for infractions of safety rules of major significance" without affecting an employee's salaried status. *Id.* § 541.118(a)(5). "Safety rules of major significance include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines." *Id.*

We disagree with defense counsel's claim that this is a case of first impression be-

cause of the above section (a)(5). This case concerns whether Rush paid Klein on a salary basis, and if she was therefore exempt from the FLSA. We do not rely solely upon one factor, as the district court did, in concluding that she was not paid on a salary basis.

### 1. Comp Time Policy

According to the Department of Labor's regulations, in certain circumstances, employers may pay exempt employees additional compensation along with a predetermined amount each pay period without automatically losing the employees' salaried status. 29 C.F.R. § 541.118(b). Some courts have stated, though, that overtime pay is generally inconsistent with a salaried status. *Abshire v. Kern*, 908 F.2d 483, 486 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991); *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 184–85 (3d Cir.1988), *cert. denied*, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1989). But other courts have upheld overtime compensation for salaried employees in particular situations. *See Pautlitz v. Naperville*, 781 F.Supp. 1368, 1371 (N.D.Ill. 1992) (holding that the better position in that case is to consider the additional pay a bonus scheme). We do not have to hold that overtime is always inconsistent with a salary because the negative comp time part of Rush's comp time policy, along with the overtime provision, help show that Klein was not paid on a salary basis.

Rush repeatedly maintains that because Klein's salary was never reduced if she left a shift early or came in late, as it was before the comp time policy, it was a "full salary ... without regard to the number of days or hours worked." 29 C.F.R. § 541.-118(a). Yet for every hour when she was late or left early, Klein had to use an hour of comp time from her comp time bank or else go into negative comp time. Of course, when a nurse is assigned a particular shift, she cannot simply arrive at work or leave whenever it pleases her; she must necessarily be there when her assigned shift begins and ends.

But the regulations have determined that a salaried employee is paid the same regardless of the number of hours worked. *Id.* An exempt employee's pay cannot be reduced for absences of less than a day according to the regulation's interpretations; permissible deductions are only for absences of a day or more. *Id.* § 541.-118(a)(2)–(3). As the Second Circuit stated: "Most courts that have addressed the issue have agreed that if an employer has a policy of reducing an employee's compensation for fractions of days that the employee is absent from work, then the employer may not invoke the ... exemption with regard to that employee." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615 (1991) (listing cases), *cert. denied*, — U.S. —, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992).

When Klein was forced to go into negative comp time, she may not have been actually paid less, but she was going into a form of debt since any later accumulated comp time had to pay off that debt. The nurses were discouraged from amassing too much negative comp time, and they could only take their comp time when the unit leader authorized it. Also significant is the fact that Klein's supervisors were not subject to this comp time policy. *Cf. Abshire*, 908 F.2d at 487 n. 2 (noting that overtime policy did not apply to higher ranked employees). Thus, this negative comp time is similar to docking an employee's pay because of the number of hours worked and is an important factor in our conclusion that Klein was not paid on a salary basis. *See id.* at 487 n. 3 (dictum) (employees could not qualify as salaried if leave time is reduced for absences less than a day even though pay is not reduced); *Benzler v. Nevada*, 804 F.Supp. 1303, 1306 (D.Nev.1992); *Aaron v. Wichita*, 797 F.Supp. 898, 907 (D.Kan.1992); *Service Employees Int'l Union v. San Diego*, 784 F.Supp. 1503, 1510 (S.D.Cal.1992).

### 2. Disciplinary Procedures

The other significant factor relied upon by the plaintiff to establish that as a matter of law she was an hourly employee is the fact that she was subject to unpaid disciplinary suspension for minor infrac-

tions. Klein argues the regulation's interpretations only allow employees to be penalized for "infractions of safety rules of major significance" without altering their exempt status. 29 C.F.R. § 541.118(a)(5).

The magistrate agreed with Klein and found that the interpretations's safety rules exception did not protect Rush's Disciplinary Procedures which subjected Klein to suspension for tardiness or rude behavior. The magistrate could not "equate an abrupt comment, a lack of cooperation, or a late arrival for a shift with the oil refinery fires and coal mine disasters" in the safety rules exception. The magistrate's Report and Recommendation, which the district court adopted with some modification, relied only upon this safety rules section as a basis for finding that Klein was not a professional employee under the FLSA's exemptions and did not address whether Rush's comp time policy also indicated that Klein was paid on an hourly basis instead of a salary basis. Evidently Rush concurs that its disciplinary policy of unpaid suspension should not apply to its exempt employees since it changed its discipline policy to ensure that exempt employees are not suspended except for infractions of safety rules of major significance.

■ We may logically infer that infractions of safety rules of non-major, i.e. minor, significance are not permissible under the interpretations since penalties for infractions of safety rules of major significance are. *See* Wage & Hour op. letter No. 90–42NR (Mar. 29, 1991) ("The *only* disciplinary type of deduction permissible is one imposed as a penalty 'in good faith for infractions of safety rules of major significance'") (emphasis added). Particularly because the regulation's chief concern is whether an employee's salary is subject to reduction because of the quality or quantity of work done. *See* 29 C.F.R. § 541.-118(a).

Rush contends that the safety rules section should not be relied upon by this court because it has not been enforced by the Department of Labor and is inconsistent with today's modern workplace, even though it has changed its discipline policy

for exempt employees. Rush and the *amicus curiae* brief from an employers management association argue that suspension is an essential disciplinary tool. In an egalitarian argument, Rush claims exempt and nonexempt employees must be subject to the same disciplinary policy. Rush also argues that because the regulation's interpretations do not have the force of law, they should not be mechanically applied without considering the purpose of the salary requirement. Rush attempts to explain that disciplinary deductions which are actually salary deductions are prohibited by the safety rules section while legitimate unpaid suspensions not meant as impermissible salary deductions should not be proscribed by the section. Rush maintains that a bona fide disciplinary suspension of an employee does not offend the principle that a salaried employee must be paid the same regardless of the quality or quantity of his or her work.

But the fact remains that Klein's salary was impermissibly reduced on occasion because of her suspensions which resulted from the quality or quantity of her work. This is inconsistent with the regulation's requirement of a salaried employee for the FLSA exemption and inconsistent with the interpretations's definition of a salaried employee. Whatever sympathy we may have for employers trying to effectively discipline employees before resorting to termination, we must defer to the regulations and interpretations. We accord great deference to an agency's interpretations of its regulations, despite that they are not binding on us, because they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 139–40, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *United Fire Ins. Co. v. Commissioner of Internal Revenue,* 768 F.2d 164, 169 (7th Cir.1985); *Homemakers Home & Health Care Servs. v. Carden,* 538 F.2d 98, 101 (6th Cir.1976). Thus we believe that Rush is subject to the safety rules section in the interpretations.

Rush alternatively argues that Klein's suspensions were permissible under the

safety rules section because they were for infractions of safety rules of major significance. Rush contends that in at least three of the four suspensions, Klein was suspended for unsafe nursing practices which is equivalent to the section's permissible penalties for violations of safety rules of major significance. Rush discounts the fact that Klein was also subject to suspension for tardiness, rude behavior, or personal appearance. Rush believes that because Klein never was actually suspended for those minor infractions, she should not lose her exempt status. Thus when the regulation's interpretations state that a salaried employee's pay "is not subject to reduction because of variations in the quality or quantity of the work performed," 29 C.F.R. § 541.118(a), a reduction of salary must have actually occurred for an employee to lose the exemption.

The courts are not in agreement on this issue of whether an employee subject to an impermissible deduction but never affected by it loses his or her exempt status. *Compare Martin,* 949 F.2d at 617 ("subject to" does not require that deduction actually made); *Abshire,* 908 F.2d at 487 (same); *Harrison v. District of Columbia,* 1991 WL 104260, at *3, 1991 U.S.Dist. LEXIS 4992, at *14 (D.D.C. April 16, 1991) (same) *with Atlanta Professional Firefighters Union v. Atlanta,* 920 F.2d 800, 805 (11th Cir.1991) (employee's salary was not subject to reduction if no deduction ever made); *Harris v. District of Columbia,* 709 F.Supp. 238, 241–42 (D.D.C.1989) (same).

█ Although we have never previously faced this issue, we find that the regulation's interpretations do not require that a deduction have actually been made from an employee's salary. "Subject to reduction" does not mean that a reduction was actually made. The plain meaning of the language suggests that it is enough that a deduction could have been made for an impermissible reason.

The impermissible deductions that could have been made here would have been from unpaid suspensions as a result of any violation of Rush's Code of Conduct such as tardiness or rude behavior. These deductions would have been impermissible because they are wholly unrelated to the penalties for "infractions of safety rules of major significance" which do not affect an employee's exempt status. 29 C.F.R. § 541.118(a)(5). Klein came very close to being suspended because of lateness, she was twice put on a formal discipline plan because of her tardiness. And she was actually suspended for rude behavior on September 27, 1989. This suspension cannot fairly be considered a matter of patient safety. The examples in the interpretations are those "relating to the prevention of serious danger," *id.,* and it would appear to us that only a serious neglect of nursing duties could possibly rise to the level of "serious danger." In a Wage & Hour opinion letter, the Acting Administrator stated: "Disciplinary deductions made from the salary of a [registered nurse] for violating rules relating to patient well-being and job performance are not the type of deductions that would be permitted by section 541.-118(a)(5) of the regulations." Wage & Hour op. letter No. 90–42NR (Mar. 29, 1991). Thus Rush's discipline policy of suspension for instances such as lateness or rude behavior in combination with its comp time policy show that Klein was not considered a professional employee at Rush and not paid on a salaried basis.

Several district courts, including the district court in this case, have expressly relied upon the improper discipline of an employee in finding that the employee is not a salaried employee. In *Pautlitz v. Naperville,* 781 F.Supp. 1368 (N.D.Ill.1992), Judge Plunkett found the City of Naperville's discipline policy was inconsistent with employment on a salary basis because police sergeants' paychecks were subject to reduction for violations of rules that were not of major significance. *Id.* at 1372–73. Similarly, in *Service Employees International Union v. San Diego,* 784 F.Supp. 1503 (S.D.Cal.1992), the district court found the employer's rules providing for suspensions because of violations of rules which had nothing to do with safety violations were inconsistent with a salaried status. *Id.* at 1511. Two courts of appeals have

indicated some support for this reasoning either indirectly or in dictum. *See Atlanta Professional Firefighters Union*, 920 F.2d at 805 (because city ordinance requiring docking of employees' pay for lateness was never used, compensation was never reduced because of quality or quantity of work); *Abshire*, 908 F.2d at 483 (dictum) (clearly exempt employees were not subject to salary deductions for tardiness like the nonexempt plaintiffs).

### D. *Window of Correction*

Rush's one last chance to avoid liability is through the "window of correction" in the regulation's interpretations. 29 C.F.R. § 541.118(a)(6). "[W]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." *Id.* Rush claims it has satisfied the window of correction by promising to compensate Klein and changing its discipline policy to ensure that exempt employees are suspended only for violations of safety rules of major significance. Rush argues the deductions from Klein's salary were inadvertent, or if failing that requirement, were not made because of lack of work within the meaning of the interpretations.

■ We find that Rush is not entitled to use the window of correction because the deductions were not inadvertent. Pursuant to its own formal Disciplinary Procedures, Rush suspended Klein several times, none of which were for the prevention of serious danger. Thus Klein's pay was intentionally reduced. These actions are not consistent with the treatment of a professional, salaried employee.

We further reject Rush's argument that it may use the interpretations's escape hatch since the deductions were not made for lack of work. The problem is with the interpretations's language in the window of correction. Section (a)(6) states that if a deduction is "inadvertent, *or* is made for reasons other than lack of work," the exemption will not be lost. 29 C.F.R. § 541.-118(a)(6) (emphasis added). So Rush relies upon the fact that the suspensions were not from lack of work. The beginning of section (a)(6) states: "Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis." *Id.*

■ But it would undermine the very effectiveness of the FLSA if we allowed Rush to preserve the exemption when its Disciplinary Procedures subjected Klein to suspensions which were not consistent with a salaried status. We agree with the district court in *Dole v. Malcolm Pirnie, Inc.*, 758 F.Supp. 899 (S.D.N.Y.1991), *rev'd on other grounds sub nom. Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir. 1991), *cert. denied*, — U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992), that "a better reading of the regulation would take these conditions conjunctively" rather than disjunctively. *Dole*, 758 F.Supp. at 906. Otherwise employers whose discipline policies preclude exempt status for their employees could escape the FLSA's overtime requirement by reimbursing any unpaid suspensions and promising to do better next time. *See Pautlitz v. Naperville*, 781 F.Supp. 1368, 1373 (N.D.Ill.1992) (relying upon *Dole* to find that deductions must have been inadvertent and for reasons other than lack of work to qualify for the window of correction). *But see Keller v. Columbus*, 778 F.Supp. 1480, 1487 (S.D.Ind.1991) (window is open for deductions made for reasons other than lack of work).

Two other courts of appeals which considered the window of correction held the window could not be used when the impermissible deductions were pursuant to an express policy and thus were not inadvertent. *Martin*, 949 F.2d at 616–17; *Abshire v. Kern*, 908 F.2d 483, 489 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). Neither court, however, discussed section (a)(6)'s apparent alternative window if the deductions were "for reasons other than lack of work," which in both cases they were. The Department of Labor apparently also has not directly addressed the problem with section (a)(6)'s language, though we note that the Secretary of Labor was the plaintiff in the *Dole* case which did squarely face the issue although the Second Circuit did not in *Mar-*

*tin.* Nevertheless we believe that when salary deductions were made according to an employer's discipline policy, the employer may not claim the deductions were inadvertent any more than the employer should be able to keep the exemption because the deductions were intentional, even though for reasons other than lack of work. Employers could too easily avoid the FLSA exemptions' salary requirement if we do not hold that intentional and impermissible deductions made for reasons other than lack of work do not meet the window's requirements.

### III. CONCLUSION

Klein cannot be considered an exempt employee under the FLSA and therefore is also not an exempt employee under the Illinois Minimum Wage Law which incorporates the federal exemptions. Ill.Ann.Stat. ch. 48, para. 1004a(2)(E) (Smith–Hurd 1992); *cf. Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1178 (7th Cir.1987). Accordingly, we affirm the district court's grant of summary judgment for the plaintiff.

AFFIRMED.