Gerald R. MUELLER, James A. Andreshak, Frederick Moeller, David Tamblyn, David Dahlk, Melvin Sensenbrenner, Richard Nelson, Roger Bohn, David Buschkopf, Curtis Paulson, Thomas M. Stemrich, Terry D. Cook, Gerard Swim, Robert Grosch, and Vernon Carlson, on behalf of themselves and all other employees of the State of Wisconsin similarly situated, and the State Engineering Association, Plaintiffs,

v.

Charles H. THOMPSON, Secretary, Department of Transportation; Department of Transportation; James R. Klauser, Secretary, Department of Administration; Department of Administration; George Meyer, Secretary, Department of

Natural Resources; Department of Natural Resources; Gerald Whitburn, Secretary, Department of Health and Human Services; Department of Health and Human Services; Carol Skornicka, Secretary, Department of Industry, Labor and Human Relations; Department of Industry, Labor and Human Relations; George K. Steil, Sr., President, Boards of Regents of the University of Wisconsin; Board of Regents of the University of Wisconsin; Jon E. Litscher, Secretary, Department of Employment Relations; Department of Employment Relations; State of Wisconsin; Robert Reich, Secretary, United States Department of Labor; United States Department of Labor, Defendants.

No. 92–C–891–C.

United States District Court,
W.D. Wisconsin.

July 22, 1994.

Lauri Roman, Kelly & Haus, Madison, WI, for plaintiffs.

Richard Moriarty, Asst. Atty. Gen., Madison, WI, for defendants.

## OPINION and ORDER

CRABB, Chief Judge.

This is a class action for declaratory relief and money damages brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 by certain employees of the state of Wisconsin who are classified as exempt from the overtime pay provisions of the FLSA. Plaintiffs allege that all of the defendants except Robert Reich and the United States Department of Labor (1) classified the individual plaintiffs improperly as "exempt" employees under the FLSA and have not paid them the overtime pay to which they are entitled for all the hours they worked in any week in excess of 40 during the period from December 3, 1989 to date; and (2) knew of the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 207, and demonstrated reckless disregard for plaintiffs in failing to pay them overtime wages. Not alleged in the complaint but agreed upon at a conference held pursuant to Fed.R.Civ.P. 16 is plaintiffs' claim that the state defendants have threatened retaliation against plaintiffs for bringing suit on their FLSA claims.

At issue are the state defendants' policies of requiring employees classified as exempt to charge their personal absences to accrued leave and subjecting these employees to disciplinary suspensions of less than one week. Plaintiffs contend that under these policies, they cannot be considered exempt employees because they are subject to reductions in pay in violation of the "salary basis" test that the United States Department of Labor developed fifty years ago for determining when managerial level employees were to be exempted from the requirements of the FLSA. Under these regulations, employees are considered to be salaried and therefore eligible to be treated as exempt executive, administrative or professional employees if, among other things, they receive a set amount of money that does not depend on hours worked or amount of work accomplished and that is not subject to deductions in pay either for personal absences less than a full day in length or for disciplinary penalties of less than one week imposed for infractions of work rules unrelated to major safety concerns. 29 C.F.R. § 541.118. Plaintiffs maintain that the state defendants are required to treat the employees subject to these policies as nonexempt employees entitled to be paid

overtime for hours worked in excess of 40 in any workweek.

The salary basis test was promulgated with only private sector employment in mind because at the time the FLSA did not extend to governmental employees. Plaintiffs' suit raises the question of the extent to which the test applies to the state, local and federal government employees to whom the FLSA has been made applicable in recent years. Plaintiffs contend that the test applies in the same manner to private and public sector employees. They maintain that the federal defendants, Robert Reich and the United States Department of Labor, acted beyond their authority in 1992, when they promulgated 29 C.F.R. § 541.5d, which changes one aspect of the salary basis test as applied to state and local government employees. The new regulation provides that exempt employees in the public sector will not lose their exemptions if their pay is reduced after they exhaust their accrued leave time or take personal leave without permission, provided that the pay system in effect is governed by principles of public accountability permitting employees to accrue leave time and requiring them to use their accrued leave for personal absences. The regulation does not change the prohibition against disciplinary suspensions of less than a week. Plaintiffs contend that the federal defendants acted arbitrarily in creating an exception that allows public employees to be treated differently from private employees for the purpose of applying the salary basis test as it relates to the use of accrued leave time. The state defendants contend that the salary basis test does not apply to state and local governments except as it has been amended in § 541.5d to reflect the demands of public accountability upon state and local governments both because Congress never intended that it would apply and because application of the test to governmental entities would raise serious constitutional questions.

The case is before the court on cross-motions by all parties for summary judgment or for partial summary judgment on the liability issues. I conclude that (1) plaintiffs have failed to show that defendants Reich and the United States Department of Labor

acted illegally in promulgating 29 C.F.R. § 541.5d; (2) plaintiffs have failed to show that they lost their exempt status simply because the state defendants required them to use accrued leave time for absences of less than a full day; (3) the salary basis test in § 541.118(a) cannot be applied to state and local government employees except as it has been amended by § 541.5d because it conflicts with congressional intent; (4) plaintiffs chose to waive their claims of willfulness in return for the state defendants' agreement that they would not contest the application of the three-year statute of limitations; and (5) plaintiffs have failed to show that the state defendants either retaliated against them or threatened to do so for bringing this suit.

For the purpose of deciding these motions, I find there is no genuine dispute with respect to any of the following material facts.

## UNDISPUTED FACTS

### The Parties

Each of the individual plaintiffs is or was employed by the state of Wisconsin during the relevant time period and has been treated by the state defendants as an exempt employee under the provisions of 29 U.S.C. § 213(a)(3). Except for defendants Robert Reich and United States Department of Labor, defendants are either state agencies or heads of state agencies. Defendant Robert Reich is Secretary of the United States Department of Labor. He and the department administer the Fair Labor Standards Act. On August 19, 1992, these defendants promulgated 29 C.F.R. § 541.5d, which became effective September 18, 1992.

Since at least December 1, 1989, each individual plaintiff has been paid a predetermined amount greater than $1000.00 for each biweekly pay period constituting part or all of that plaintiff's compensation for all work weeks during which that plaintiff performed work and was categorized as exempt under the provisions of the FLSA. In addition, since July 1, 1973, state engineers, such as plaintiffs, have received straight time overtime for work performed in excess of 40 hours a week, as a consequence of a study showing that the state was losing skilled

engineers to the higher-paying private sector. Straight time overtime is now incorporated into the collective bargaining agreement between the state and plaintiff State Engineering Association.

The predetermined amount paid to each plaintiff has not been subject to reduction because of variations in either the quantity or quality of work performed by that plaintiff. However, in every pay period, plaintiffs have been required to charge personal absences of less than a day to compensated leave balances.

*Wisconsin Personnel Policies*

Under Chapter 504 of the Wisconsin Personnel Manual, the state uses an Official Hourly Rate to calculate the rate of pay of all state employees including the governor and excluding only the nonclassified employees of the University of Wisconsin, regardless whether the employees are salaried and "exempt" or paid on an hourly basis and nonexempt under the FLSA. Use of this rate facilitates accurate record keeping and calculations and promotes administrative convenience and uniformity.

State engineers are eligible for straight time overtime. In order to establish their eligibility for this overtime pay and because many of them are working on projects funded by program revenue or federal money and requiring documentation of time and attendance of employees for auditing purposes, state engineers must keep accurate records of the time they work.

The state has a long-established policy requiring its employees to account for any non-work-related absences from the work place, including those of less than one full day.

As set forth in pages 4 through 6 of Chapter 516 of the Wisconsin Personnel Manual, since at least April 15, 1986, the state has prohibited all state agencies from deducting pay for personal absences from work of less than one day from the salaries of any employee considered exempt under 29 U.S.C. § 213(a)(3).

The Wisconsin Department of Employment Relations employs a compensation analyst to monitor partial-day pay deductions for all FLSA-exempt state employees other than those employed by the University of Wisconsin System. If any employing agency deducts pay from any exempt employee for an absence of less than a full day, the employing agency is sent a standard form letter advising it of the prohibition on pay deductions for absences of less than one day. The University of Wisconsin–Madison has monitored its employees in the same manner since at least April 15, 1986.

The state of Wisconsin has a policy of imposing uniform discipline upon all employees whether they are represented or unrepresented, management or nonmanagement. As an employer, the state is obliged to establish fair and reasonable work rules for all employees and to establish and administer a fair and reasonable system of discipline for employees who violate work rules, state law or federal law. In determining appropriate discipline in any given case, the state employer must impose discipline that is fair, appropriate to the circumstances, and not excessive. This goal remains the same whatever the employee's status. Differentiating in the application of discipline between represented and unrepresented employees or between exempt and nonexempt employees would risk undermining the validity of the discipline, violating the state's labor relations laws, creating dissension and morale problems among the state's work force and violating the employees' equal protection rights under the state and federal constitutions.

The FLSA status of an individual employee of the state of Wisconsin is not determined solely from the classification of the position held. Exceptions to the usual treatment of employees in a "class title" as exempt or nonexempt are made in appropriate instances and are based on the duties and responsibilities of the individual employee.

*Instances of Pay Deductions*

Of all state employees who have engineering classifications, with the exception of named plaintiff David A. Russell and class member Terry D. Cook, only three employees have had pay deducted for an absence from work of less than one day since December 1, 1989. (1) Thomas Peronto, Department of Transportation, was listed as having

had four hours deducted during the two-week pay period ending August 10, 1991; this apparent deduction was actually a mathematical error in Peronto's leave accounting balance. No actual pay was deducted from his salary. (2) Larry Legro, Department of Health and Social Services, had 5.5 hours deducted during the pay period ending April 18, 1992; this was an inadvertent error that was corrected in the pay period ending 5/16/92. (3) Karen Lynn Olson was listed as having a payroll deduction for a partial-day absence; the deduction resulted from Olson's request to work at home part-time during an extended maternity leave. In return for the accommodation of her request, she agreed to waive all rights under the Fair Labor Standards Act during this pay period.

On one or more occasions, plaintiff Terry Cook has been disciplined by the department in which he works for using sick leave for absences from work when his supervisors did not believe him to be sick. During the pay period ending December 1, 1990, he was charged with 2.75 hours of leave without pay and during the pay period ending October 19, 1991, he was charged with 21 hours of leave without pay. He has filed a grievance, which is pending. Plaintiff Cook did not work any overtime during the two pay periods for which he received the leave without pay deductions.

During the pay period ending March 21, 1992, class member David Russell received an eight hour leave without pay deduction from his salary. This deduction represented a disciplinary suspension for leaving a training session midway during the presentation and not returning to work. During the pay period ending December 12, 1992, Russell's salary was reduced by 3.5 hours of leave without pay to account for the time in which he was absent from the training session but did not take any form of personal leave. During the two weeks for which Russell received the leave without pay deductions, he did not work any overtime.

*Threatened Consequences*

For many of the jobs held by plaintiffs, the state has made it a requirement that the persons holding them meet the criteria for entitlement to a professional exemption under the FLSA.

In an affidavit sworn to on December 18, 1992, Judith A. Burke, a classification analyst for the Wisconsin Department of Employment Relations, averred that if a court were to determine that employees serving in the positions of classifications of civil engineers at issue in this suit were not exempt from the overtime pay provisions of the FLSA, the Department of Employment Relations

> would be required to review the positions of all state employees currently holding positions in those classifications to determine the appropriate "non-professional" classification series for each position, and to place each position in the appropriate classification, union and bargaining unit.

In a brief filed with this court, counsel for defendants referred to "clear adverse consequences which many potential plaintiffs already perceive and which the named plaintiffs have disparaged or denied...." In various other submissions to the court, both written and oral, counsel for defendants has expressed concern that plaintiffs be made aware of the possible adverse consequences that could follow upon a determination that plaintiffs must be treated as nonexempt under the FLSA. In counsel's view, these consequences could include reclassification and removal from the bargaining unit.

### ADDITIONAL FACTS

At a conference held on December 8, 1993, pursuant to Fed.R.Civ.P. 16, plaintiffs stipulated to abandoning their claims that the state defendants had either created job classifications without conducting the inquiry required under the FLSA to determine the status of each individual position or had designed job classifications in ways that discouraged employees from asserting their rights under the FLSA or both. In return, defendants agreed not to contest the application of the three-year statute of limitations. (Ordinarily, plaintiffs must make a specific showing of willfulness on the part of the employer to establish their eligibility for the three-year statute to apply in place of the two-year statute.) 29 U.S.C. § 255(a).

## OPINION

### A. Background

When it enacted the Fair Labor Standards Act in 1938, Congress imposed the requirement that employers pay one and one-half the regular rate of pay to employees who work more than forty hours in any work week, 29 U.S.C. § 207(a)(1), but exempted from this requirement persons employed in a "bona fide executive, administrative or professional capacity." 29 U.S.C. § 213(a). Congress delegated to the Secretary of the Department of Labor the task of defining "executive, administrative and professional." *Id.* In 1940, the department promulgated regulations defining an employee in an executive, administrative or professional capacity as one who performs certain duties and has certain specified responsibilities, and "is compensated for his services on a salary or fee basis...." 29 C.F.R. §§ 541.1(f), 541.2(e)(1), 541.3(e)(1). In addition, the regulations required that the exempt employee receive a certain minimum salary, which under the current regulations is at least $155 a week. 29 C.F.R. § 541.17. Employees are considered to be paid on a "salary basis" if they regularly receive a predetermined amount constituting part or all of their compensation, "which amount is not subject to variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). Deductions may be taken from the pay of an exempt employee for personal absences without violating the salary basis test only if the deductions are taken for absences of more than a day. *Id.* Also, deductions may be taken for infractions of work rules if the deductions are for a week or longer or if they are imposed for infractions of major safety rules.

In 1938, when the FLSA was first enacted, it did not apply to employees of state and local governments. In 1966, Congress withdrew the minimum wage and overtime exemptions for employees of public hospitals, schools and certain mass transit carriers. This extension of the FLSA was held to be a constitutional exercise of Congress's commerce clause power. *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). In 1974, however, when Congress extended FLSA coverage to almost all state and local government employees, the Supreme Court reversed course in part and held the extension unconstitutional to the extent it applied to the "traditional governmental functions of state and local governments." *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Fewer than ten years later, the Court overruled *National League of Cities* in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 533, 105 S.Ct. 1005, 1008, 83 L.Ed.2d 1016 (1985), holding that it was impossible to distinguish "traditional" and "non-traditional" government functions in a principled manner consistent with the principles of federalism. *Garcia*, 469 U.S. at 537–47, 105 S.Ct. at 1010–15. Abjuring the effectiveness of "judicially created limitations on federal power," the Court held that the protection of state sovereignty interests was properly left to the "procedural safeguards inherent in the structure of the federal system." *Id.* at 552, 105 S.Ct. at 1018.

After *Garcia* was decided in 1985, Congress amended the FLSA to provide a temporary adjustment period for state and local governmental employers. Pub.L. 99–150, 99 Stat. 787 (1985). Recognizing that governmental employers were concerned about the existing salary basis test because they were prohibited by state and local law from paying employees for time not worked, the Wage and Hour Administrator of the Department of Labor announced that the department would adopt a nonenforcement policy with respect to the "salary basis" test as applied to government employees until the department could make appropriate changes. *See* discussion in 57 Fed.Reg. 37668. However, the administrator stated expressly that the division's nonenforcement policy was not intended to affect the rights of public employees to file private lawsuits. *Id.* Many such lawsuits were filed, with widely divergent results. *Id. See, e.g., Atlanta Professional Firefighters Union, Local 134 v. Atlanta*, 920 F.2d 800 (11th Cir.1991) (salary not subject to deductions and employees do not lose their eligibility for exempt status if no evidence that salary ever reduced in fact; mere possibility of reduction is not a violation of salary

basis test); *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir.1990) (possibility that salary may be reduced defeats exempt status) (dictum), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). Finally, on September 6, 1991, acknowledging belatedly the potential liability that "threatened to impair the fiscal integrity of many State and local governmental agencies," *id.*, the Department of Labor promulgated an interim final rule "to provide an exception from certain provisions requiring payment 'on a salary basis' applicable only to public sector employees." 56 Fed.Reg. 45824. Under this rule, otherwise exempt public employees would not lose their exempt status even if they were paid according to a pay system that required deductions for periods of less than a day when no leave was available. *Id.* at 45826. Plaintiffs contend that this interim rule was not promulgated properly and should not be given any credence. The federal defendants disagree, pointing out that they were not parties to the cases cited by plaintiffs and thus had no opportunity to argue the legality of the interim regulations. As will be seen in the discussion that follows, it is unnecessary to decide the legality of the interim regulations at this time.

On August 19, 1992, the department issued its final rule, which provides that employees of public agencies are not disqualified from exempt status simply because they are paid according to a pay system "established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability," under which the employees accrue leave time and have their pay reduced or are forced to take leave without pay for partial-day absences for personal reasons, illness or injury when (1) they do not use accrued leave because they have not sought permission for use of leave time or have sought permission and been denied it; (2) they have exhausted their leave; or (3) they choose to use leave without pay. 29 C.F.R. § 541.5d. The federal defendants have explained that they proposed § 541.5d because they realized that the existing "regulations were ... out of harmony with the intent of the statute because State and local governments could not avail themselves of the exemption intended by Congress, and thus were inappropriate as applied in the public sector." 57 Fed.Reg. 37672.

The promulgation of § 541.5d does not resolve all of the questions raised in attempting to apply the salary basis test to public employees. The regulation deals only with the use and exhaustion of accrued leave time; it does not address the question of disciplinary deductions. (Although a number of commentators had asked for modification of this provision during the comment period provided in connection with § 541.5d, the department deferred taking any action because the provision of the salary basis test concerning disciplinary deductions, § 541.118(a)(5), was not open for comment at that time. 57 Fed.Reg. 37674.) In addition, there remains the question whether otherwise exempt employees who were required to use accrued leave time between 1985, when *Garcia* was decided, and 1991, when the interim rule was promulgated, are to be considered exempt or nonexempt during that period. Finally, there is the question raised by plaintiffs in this case whether the promulgation of § 541.5d was within the authority of the department. I begin with this last question.

### B. *Validity of 29 C.F.R. § 541.5d*

In contending that the Secretary exceeded his authority in promulgating § 541.5d, plaintiffs are swimming against the tide. When Congress has made an express delegation, as it did here in directing the Secretary to define the terms "executive," "professional" and "administrative" from time to time by regulations, 29 U.S.C. § 213(a)(1), a reviewing court can set aside the resulting regulations only if it finds that the Secretary "exceeded his statutory authority or if the regulation is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977) (quoting 5 U.S.C. §§ 706(2)(A), (C)). *See also Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (same). Delegation of a specific task almost ensures approval of the result; the courts must accept any reasonable exercise of the delegated discretion. *Reich v. State of New York*, 3 F.3d 581, 587

(2d Cir.1993) (citing *Batterton,* 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9), *cert. denied,* —— U.S. ——, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994).

■ Plaintiffs maintain that the Secretary acted in contravention of congressional intent when he promulgated two different salary basis tests for public and private employees. Plaintiffs draw the inference that Congress intended no distinction between public and private employees from two sources: Congress's failure to make any such distinction when it first extended the FLSA to public sector employees and its failure to make any changes in the provisions for determining whether employees qualified as executive, administrative or professional in 1985, when it amended the FLSA to address particular concerns of state and local governments. Plaintiffs argue that these omissions are significant because Congress could have made specific accommodations for state and local governments if it had believed such accommodations were necessary.

Plaintiffs' argument misapplies the principle of statutory construction that the specification of certain things implies that others are intended to be excluded ("expressio unius est exclusio alterius"). The maxim is "notoriously unreliable," *Custis v. United States,* —— U.S. ——, ——, 114 S.Ct. 1732, 1741, 128 L.Ed.2d 517 (1994) (Souter, J., dissenting), because it "rests on the assumption that all omissions in legislative drafting are deliberate, an assumption we know to be false." *Id.* *See also In the Matter of American Reserve Corp.,* 840 F.2d 487, 492 (7th Cir.1988) (omission "may show that Congress has not grappled with the problem"); *Illinois Dep't of Public Aid v. Schweiker,* 707 F.2d 273, 277 (7th Cir.1983) ("not every silence is pregnant"). In arguing for the drawing of an inference of Congress's intent not to act from its failure to act, plaintiffs ignore the context in which the legislation was passed. They fail to consider that Congress had delegated to the Secretary the task of defining exempt employees and therefore, had no reason to focus on how that the definition would be interpreted to apply to the public sector. Moreover, plaintiffs ignore the strong evidence that Congress would not have intended that public employees would be treated in the same manner as private employees if the result would be the elimination of exemptions for public employees. Such a result would contravene Congress's stated intention that the exemptions under the FLSA for supervisory employees are available for public sector employees. H.R.Rep. No. 93–913, 93d Cong.2d Sess. 27 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837:

> Section 6 of the bill extends minimum wage and overtime coverage to about 5 million *non-supervisory* employees in the public sector not now covered by the [FLSA].... The bill will provide that virtually all *non-supervisory* government employees will be covered...." By the same token, the committee intends to cover all employees (*except professional, executive, and administrative personnel who are exempted under section 13 of the law*) in all civilian branches of the Federal Government.

(Emphasis added). Writing in the Columbia Law Review, Deborah Jones Merritt suggests that Congress's reasons for exempting managerial level employees went beyond mere desire for parity between the public and private sectors to recognition of the limits of federal power under the guarantee clause, Art. IV, sec. 4, to regulate the wages and hours of the persons who possess and exercise the powers of republican government within the states. Merritt, *The Guarantee Clause and State Autonomy: Federalism for a Third Decade,* 88 Colum.L.Rev. 1, 56–57 (1988).

The Secretary has acknowledged that preserving an exemption for supervisors in the public sector would be impossible unless accommodation were made for the needs of local governments to be accountable to the public in their pay practices. 57 Fed.Reg. 37667. Without such an accommodation, the consequence would have been a public employee work force with few exempt employees or none at all and a private sector with its full complement of exempt employees. Such a result would constitute a clear frustration of congressional intent and perhaps, of the Constitution's promise to secure to the states the autonomy to maintain a republican

form of government, that is, a government in which the people of the state determine the hours and wages of the state employees who exercise the executive, judicial and legislative functions of state government.

Plaintiffs' arguments suggest a lack of understanding of the purpose of the salary basis test. Essentially, it is a tool for distinguishing between truly salaried, supervisory and professional employees and those who are nonsalaried and nonsupervisory. It is intended to reflect the realities of the work place. The regulatory interpretation of salary basis in existence until 1991 dates back to 1954 and reflects the results of public hearings held in the 1940's and 50's, when testimony and other evidence were taken from representatives of private industry to determine actual pay practices as they existed in private industry at the time. 57 Fed.Reg. 37666. That evidence indicated that "employees who did not meet the salary test generally also did not meet the other requirements of the exemption." *Id.* at 37672. It was the Secretary's determination in 1954 that the salary basis test was consistent with bona fide employment practices in the private sector; in other words, it was an accurate indication of the way private industry treated its supervisory employees.

It is instructive to note that during World War II, employment policies in the private sector changed as it became common for employers to make disciplinary pay deductions to deter absenteeism. During this period, the Department of Labor changed its regulations to reflect the fact that such deductions were not inconsistent with payment on a salary basis. After the war ended, the practice of disciplinary pay deductions ended and the regulations were revised again to reflect the changed practices. Report and Recommendations on Proposed Revisions of Regulations, Part 541 at 24–25 (Department of Labor, June 1949).

When the FLSA was extended to public sector employees in 1985, it became apparent to the Department of Labor that practices in the private sector could not be carried over to the public sector without amendment, because of "the public accountability principles prevalent in public sector pay systems." 57 Fed.Reg. 37672. Unlike private employees, most public sector employees are subject to requirements that they use accrued leave time when they are absent from work for less than a day. *Id.* To this extent, the salary basis test that reflected the actual working of the private sector in the 1940's and 50's fell short as a guide for the public sector's treatment of its supervisors. The test needed amendment if it was to serve its purpose as a shorthand method of identifying actual administrative, executive and professional level employees in the public sector. In amending the regulations to give a more accurate reflection of the employment practices of governments, the federal defendants acted in accordance with the long-settled practice of the Secretary, which was incorporated in a regulation promulgated on October 20, 1938, that "[i]n determining . . . future regulations, separate treatment for different industries and for different classes of employees may be given consideration." 29 C.F.R. § 541.5 (3 Fed.Reg. 2518) (1938); 29 C.F.R. § 541.6 (1993).

The promulgation of § 541.5d was necessary to carry out Congress's intention to make the supervisory exemptions of the FLSA available to state and local governments and to avoid potential constitutional problems. The regulation is a reasonable and necessary response to a difficult problem created by the extension of the FLSA to state and local government employees. The federal defendants are entitled to summary judgment on the claim that § 541.5d is invalid because it distinguishes between private and public sector employees with respect to the use of accrued leave.

### C. *Accrued Leave Policy Before Enactment of § 541.5d*

■ Plaintiffs have challenged only two aspects of the state defendants' pay policies as violating the salary basis test: the required use of accrued leave time for personal absences and the imposition of disciplinary sanctions of less than a week. They do not attack the state's decision to give plaintiffs straight overtime pay as a means of making their salaries competitive with the private sector and they have abandoned any claim that the duties they actually perform do not

meet the duties tests for exempt positions set out in 29 C.F.R. §§ 541.1, 541.2 and 541.3.

It is plaintiffs' contention that even if § 541.5d is valid, the state defendants were in violation of the accrued leave provisions of the salary basis test until § 541.5d was promulgated in September 1992. They concede that the state defendants have not reduced the pay of any of the plaintiffs for taking leave after exhausting their accrued leave time, but they contend that the state defendants have been violating the test by requiring employees classified as exempt to charge personal, partial-day absences to their accrued leave accounts. Citing *Klein v. Rush–Presbyterian–St. Luke's Medical Ctr.*, 990 F.2d 279 (7th Cir.1993), plaintiffs argue that employees required to account for their personal leave time cannot be considered to be exempt from the FLSA. Plaintiffs are contending that for the period December 3, 1989 to September 1992, they are entitled to overtime pay for any weeks during this period in which they worked more than 40 hours because they were required to use accrued leave accounts for partial day personal absences during this period.

In *Klein*, the court of appeals held that the "professional" exemption under the FLSA did not apply to a nurse in private employment who was required to use compensatory time for personal absences, while her immediate supervisors were not, and who was subject to disciplinary suspensions for minor infractions. Although Klein's employer had a policy of never reducing pay when an employee used leave time beyond what she had accrued, the court of appeals held that the mere requirement that she use her accrued leave time was a form of deduction in pay. "When Klein was forced to go into negative comp time, she may not have been actually paid less, but she was going into a form of debt...." *Klein*, 990 F.2d at 284. The court of appeals emphasized the fact that Klein's supervisors were not subject to the comp time policy. *Id.*

In relying on this holding, plaintiffs downplay the fact that *Klein* concerned an employee in the private sector. Plaintiffs emphasize that the court of appeals relied for its holding on a number of cases involving governmental employees. They argue that the court of appeals would reach the same holding in this case, but their argument is not persuasive. Most public employers have compensation systems requiring "all employees, regardless of how paid, to use accrued leave time or incur a reduction in pay for any absences." 57 Fed.Reg. 37667. If all or most employees in the public sector must use compensatory time for personal absences, the fact that any one employee is required to do so does not help the fact finder determine whether the employee is viewed (and treated) by the employer as holding a bona fide professional, executive or administrative position. *Id.* at 37670 (certain aspects of the salary basis test "are not valid indicators of the *bona fides* of a claimed exemption under [29 U.S.C. § 213(a)(1) ] in the public sector where every employee may theoretically be subject to potential docking for partial-day absences"). In *Klein*, by contrast, the mandatory use of compensatory time for personal absences was a means of distinguishing lower level, nonmanagement employees from others, such as Klein's immediate supervisors.

In addition, the court of appeals would likely give weight to the Secretary of Labor's view, expressed in § 541.5d, that the required use of accrued leave time by government workers does not affect the amount of pay such workers receive. The new regulation casts doubt on the holdings relied on by the court of appeals in *Klein*, 990 F.2d at 284, to the effect that reduction of leave time is the equivalent of a reduction in pay even though pay is not actually reduced. *See Abshire v. Kern*, 908 F.2d at 487 n. 3; *Benzler v. Nevada*, 804 F.Supp. 1303, 1306 (D.Nev.1992); *Aaron v. Wichita*, 797 F.Supp. 898, 907 (D.Kan.1992); *Service Employees Int'l Union, Local 102 v. County of San Diego*, 784 F.Supp. 1503, 1510 (S.D.Cal.1992).

It is noteworthy that the Court of Appeals for the Ninth Circuit has disavowed its dictum in *Abshire*, 908 F.2d at 487 n. 3. Many courts had relied on this dictum, which suggested that an express policy of deducting from public employees' accrued paid leave for absences of less than one day *might* violate the salary basis test, even if such deductions were never made. These courts had held

that such deductions do violate exemption. *See, e.g., Fleming v. Carpenters/Contractors Cooperation Comm.*, 834 F.Supp. 323 (S.D.Cal.1993) (requiring employees to use accrued leave for partial-day absences violates salary basis test). *See also Benzler*, 804 F.Supp. 1303; *Aaron*, 797 F.Supp. 898; *Service Employees*, 784 F.Supp. 1503. In a recent opinion, *Barner v. City of Novato*, 17 F.3d 1256 (9th Cir.1994), the court of appeals affirmed the district court's holding that "deductions from the paid leave banks of the Plaintiffs for absences of less than one day did not constitute impermissible deductions from 'salary' as defined in 29 C.F.R. 541.-118." *Id.* at 1261. Basing its decision on the holding that the words "amount" and "compensation" in the salary basis test set out in 29 C.F.R. § 541.118(a) refer to "cash" or "salary," the court held that a reduction in paid leave time does not affect the amount of an employee's compensation paid to him regularly; therefore, requiring a public employee to use accrued leave for personal absences does not affect his status as a salaried employee. In reaching this conclusion, the court noted expressly that it was rejecting the holdings of *Benzler, Fleming,* and *Service Employees*. Given this disavowal of the *Abshire* dictum, it is unlikely that in a case involving public employees the Court of Appeals for the Seventh Circuit would reach the same conclusion it reached in *Klein* that the required use of accrued leave is equivalent to a deduction in pay.

Again citing *Klein*, 990 F.2d 279, plaintiffs raise a second contention: that because they were always "subject to" an actual reduction in pay if they exhausted their "accrued leave," they never met the requirements for exempt employees. Addressing disciplinary suspensions for minor infractions, a different issue, the court of appeals held in *Klein* that such a suspension and resulting reduction in pay need not actually have occurred before the practice could be said to violate the statute: "it is enough that the deduction could have been made for an impermissible reason." *Id.* at 286.

A number of courts have held in government employee cases that the mere possibility that salary might have been reduced for

partial day absences did not make the salary "subject to" such reductions if the reductions were never taken. *See, e.g., McDonnell v. City of Omaha*, 999 F.2d 293, 297 (8th Cir. 1993) (declining to read "subject to" language of regulation as meaning that possible or contingent reduction in salary automatically means pay is "subject to reduction"); *York v. City of Wichita Falls*, 944 F.2d 236 (5th Cir.1991) (executive status not necessarily defeated by subjecting pay to reductions if reductions never actually taken); *Atlanta Professional Firefighters Union*, 920 F.2d at 805 (salary not subject to deduction if deduction never taken); *Harris v. District of Columbia*, 709 F.Supp. 238, 241–42 (D.D.C. 1989) (same). *See also Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections*, 992 F.2d 82 (6th Cir.1993) (although leave policy could be read as requiring docking of pay when accrued leave exhausted, policy language was ambiguous; fact that no employee had ever been docked pay under this policy persuades court that employees were not "subject to" reduction in pay before September 1, 1991, when Secretary promulgated interim salary basis test).

In this case there is no ambiguity about the policy and not even a possibility that reductions would be made. The clear language of the state regulations prohibited reductions and state employees monitored payrolls to ensure that none were ever made. I conclude that even before 1991, the salary basis test in § 541.118 was not violated by the state defendants' policy requiring employees to charge partial-day absences to accrued leave accounts. Moreover, even if the state defendants' policies did not fulfill the requirements of the salary basis test, I would not hold that the state defendants had forfeited their right to claim an exemption for plaintiffs. As the Department of Labor explained in promulgating § 541.5d, Congress never intended to require state and local governments to chose between their obligation to remain accountable to the public and their ability to make use of the FLSA's managerial exemption. Therefore, the regulation would be invalid as applied to the public sector because it contravenes congressional intent. *Chevron U.S.A.*, 467 U.S. at 843 and n. 9, 104 S.Ct. at 2781–82 and n. 9 (as

final authority on issues of statutory construction, judiciary "must reject administrative constructions which are contrary to clear congressional intent").

### D. *Application of 29 C.F.R. 541.118(a)(5) to State and Local Governments*

■ The salary basis test, § 541.118, requires that an exempt employee "must receive his full salary for any week in which he performs any work," subject to a few exceptions. Among these are § 541.5d, discussed above, and the provision in subsection (5) of § 541.118 that penalties imposed in good faith for infractions of safety rules of major significance may be deducted from the salaries of exempt employees without affecting their exempt status. Although subsection (5) does not say explicitly that exempt status will be lost if deductions are taken for other infractions, the only logical reading of the subsection is that the salary basis test is violated by the imposition of a penalty suspension without pay of less than a week, unless the penalty is imposed for the violation of a major safety rule. *See Klein,* 990 F.2d at 285 (citing Wage & Hour op. letter No. 90–42NR (Mar. 29, 1991)) (only disciplinary type of deduction permissible is one imposed as penalty for violations of major safety rules).

Class member Russell received a deduction from his pay as a penalty for an infraction not involving a safety rule. Plaintiff Cook may receive such a deduction, depending on the outcome of his grievance proceeding. Plaintiffs contend that the imposition of such a penalty on Russell is evidence that the state defendants have been treating all the plaintiffs as nonexempt employees for the three years preceding the filing of this suit and for all the time since then. They argue that the disciplinary suspension imposed on Russell shows that it was always possible that an otherwise exempt employee would receive a disciplinary suspension of less than a week.

The state defendants do not argue that Russell's suspension was inadvertent or that the disciplinary policy is no longer operative. To the contrary, they argue forcefully that they have an obligation to continue to impose such discipline when it is warranted if they

are to remain accountable to the public. They cite the constraints of the equal protection clause as well, which they say requires them to treat exempt and nonexempt employees alike in imposing disciplinary suspensions.

If this case arose in a private employment context, the holding in *Klein,* 990 F.2d 279, would dictate the conclusion that employees "subject to" the same kind of discipline Russell received cannot be considered to be exempt under the FLSA. The court's holding is explicit: when employees are subject to reductions in pay because of partial-week suspensions that are related to the quality or quantity of their work, they do not meet the salary basis test set out in § 541.118(a). It is not necessary that they actually have had deductions made in their salary; "it is enough if the deduction could have been made for an impermissible reason." *Id.* at 286.

*Klein* forecloses most of the arguments that the state defendants might make to support their position that the possibility of disciplinary suspensions should not endanger an employee's exempt status. Chief among these is that the regulation should not be applied mechanically without considering the purpose of the salary basis test. *Klein,* 990 F.2d at 285. Klein's employer argued that "disciplinary deductions which are actually salary deductions are prohibited by the safety rules section while legitimate unpaid suspensions not meant as impermissible salary deductions should not be proscribed by the section." *Id.* Another way of saying this is that the salary basis test is designed to prevent an employer from treating its employees as hourly workers while classifying them as exempt. If the employees have their pay docked for being late to work, or not being at their desks from nine to noon, or not finishing a specified amount of work, then the penalties are being used in a manner inconsistent with exempt status. On the other hand, the argument goes, if the penalties are imposed only for such serious work rule violations as lying about work-related matters, forging documents, or sexually harassing a co-worker, they are imposed for reasons that have nothing to do with whether the employ-

ee should be classified as exempt or nonexempt. The court of appeals rejected this argument in *Klein,* although it is not clear whether it did so on the merits or simply because it thought the argument inapplicable to Klein. The court said only that "the fact remains that Klein's salary was impermissibly reduced on occasion because of her suspensions which resulted from the quality or quantity of her work." *Id.* (Presumably the court believed that Klein's suspensions for rudeness, failure to help a patient and "performance problems" related to the quality of her work.)

It is possible that the court of appeals would find *Klein* inapplicable to disciplinary penalties imposed in connection with unauthorized absences for the reason relied on by the Court of Appeals for the Fourth Circuit in *Shockley v. City of Newport News,* 997 F.2d 18 (4th Cir.1993). In *Shockley,* the court held that 29 C.F.R. § 541.118 is not violated by imposing a partial-week deduction in pay as a penalty for a failure to report an absence, because such a deduction is inherent in the power to reduce pay for the partial-day reductions in pay now recognized as allowable under 29 C.F.R. § 541.5d. The holding is not entirely persuasive.[1] Section 541.5d addresses deductions in pay for certain partial-day absences, including unapproved absences. It is not clear that the regulation authorizes a deduction in pay imposed as a disciplinary sanction for taking unapproved leave or that it is intended to modify the language in § 541.118(a)(5) limiting permitted disciplinary deductions to those imposed for violations of major safety rules.

The conclusion seems inescapable that if the disciplinary deduction aspect of the salary basis test applies to government employees, there is no principled way in which to avoid its application to plaintiffs under *Klein.* I am persuaded, however, that just as the

department has recognized through the promulgation of § 541.5d that Congress never intended that public employees would be covered by the prohibition on reductions in pay for partial-day absences, Congress never intended that state and local governments would be bound by the prohibition on disciplinary deductions of less than a week contained in 541.118(a)(5). Although the federal defendants maintain that there is a distinction between reductions for partial-day absences and disciplinary suspensions, they have provided no credible explanation for this position and it seems dubious in light of their arguments regarding the validity of § 541.5d.

As the Department of Labor explained when it promulgated § 541.5d, principles of public accountability would have made it impossible for many state and local governments to meet the salary basis test for managerial employees if the test were not modified to permit the use of accrued leave systems that had been in place for decades. 57 Fed.Reg. 37667–76. The department recognized that requiring state and local governments to change their pay policies to conform to the § 541.118 salary basis test would conflict with the principles of public accountability to which many state and local governments are subject. 57 Fed.Reg. 37673. The department has acknowledged that the public "does not tolerate wasteful and abusive excesses such as padded payrolls or 'phantom' employees," *id.* at 37676, and that it was necessary to modify the salary basis test to accommodate these concerns in order to carry out Congress's intent that public employment would have the same professional, executive and administrative exemptions that private employment has always had.

Although promulgation of § 541.5d conformed the Department of Labor's regulations to congressional intent with respect to use of accrued leave, it did not resolve the

1. The holding seems to reflect a growing recognition of the problems caused by attempting to apply to governmental employment the salary basis test developed for the private sector and an attempt to deal with those problems. *See also Avery v. City of Talladega,* 24 F.3d 1337 (11th Cir.1994) (holding that disciplinary suspension of two police lieutenants for non-safety-related in-

fraction resulted in loss of exempt status for all lieutenants; adding that court would resist the temptation to conclude that § 541.118(a)(5) is arbitrary and capricious as applied to law enforcement employees, "because the City did not raise that issue in the district court and has not suggested it in this court").

question of the validity of applying to public employees the portions of § 541.118 that were not altered by the promulgation of § 541.5d. As I noted previously, had it been necessary to decide whether reductions in pay for partial-day absences violated the salary basis test prior to 1992, I would have held that the application of the pre–1991 regulation to the public sector did not accord with congressional intent and was invalid as applied to governmental employees. *See Chevron*, 467 U.S. at 843 and n. 9, 104 S.Ct. at 2781–82 and n. 9; *Stewart v. City and County of San Francisco*, 834 F.Supp. 1233, 1238 (N.D.Cal.1993) (if salary basis regulations in effect before 1991 were contrary to intent of Congress, regulations cannot be applied to public employees). *See also Martinez v. Rhode Island Housing and Mortgage Finance Corp.*, 738 F.2d 21, 26 (1st Cir.1984) (citing *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936)) ("a rule out of harmony with the statute is a mere nullity").

Returning to § 541.118(a)(5), which prohibits the use of partial-week disciplinary suspensions except for violations of major safety rules, I find this provision invalid as applied to the public sector because it does not comport with congressional intent to afford public sector employers the same opportunities for FLSA exemptions as private employers. The situation is more egregious than with partial-day absences, because the Department of Labor has not yet considered in any formal way the effects of § 541.118(a)(5) on state and local governments' ability to claim the FLSA exemption. Rather, subsection (5) of § 541.118(a) remains in force. It purports to tell state and local governments how they may discipline their employees and for what infractions, placing them in a quandary similar to the one they faced when they believed the choice was between dismantling accrued leave systems and forgoing all exemptions under the FLSA. Either the states give up their ability to discipline their employees in the way they believe best suited to maintaining public accountability or they forgo all exemptions under the FLSA.[2]

It is no answer to say, as the federal defendants do, that the impairment of the states' disciplinary authority is minor because government employers have other options for disciplining exempt employees, such as letters of reprimand, demotions, transfer to less favored positions or suspensions of more than a week. For many reasons, state and local governments lack the kind of disciplinary flexibility the federal defendants hypothesize. The inadequacy of the federal defendants' response is amplified by the fact that when the issue of disciplinary suspensions was raised during the notice and comment period for § 541.5d the department offered the same response it urges in this case, that is, that the disciplinary prohibition is no real burden on state and local governments in part because they have other disciplinary options, but then noted that § 541.118(5)

> was not open for comment during the present rulemaking. However, the Department expects to consider this issue as appropriate in proposed revisions of Part 541 at a later date.

57 Fed.Reg. 37674. The Department of Labor cannot contend with any consistency that the application of § 541.118's prohibition on disciplinary sanctions vindicates congressional intent. The department has failed to give any formal consideration to this issue and has recognized the need for such consideration in the future, while arguing that promulgation of § 541.5d was necessary because § 541.118 was "out of harmony" with congressional intent. 57 Fed.Reg. 37672. It is not credible for the Department of Labor to acknowledge that the regulation needs substantial revision in order to comply with Congress's wishes, and then to assert without investigation that the application of another

---

2.  Wholly apart from concerns of state autonomy, the salary basis test creates another Hobson's choice for state and local governments. These governments are required to keep precise records of all the time their employees work on federally-funded state projects and they are subjected to potential penalties if they fail to do so. At the same time the federal government seems to disallow these governments from claiming exempt status for professional employees if the employees are required to keep time records and are subject to discipline for not working or for falsifying their time records.

subsection of the regulation conforms with congressional intent. When an agency offers inconsistent interpretations of a statute, that agency's interpretations are not entitled to deference. *Batanic v. I.N.S*, 12 F.3d 662, 666 (7th Cir.1993).

Because the Department of Labor has neither considered the issue of disciplinary sanctions nor offered any persuasive reason for its apparent belief that the ability to impose disciplinary sanctions is less central to state and local governments' public accountability obligations than the ability to impose reductions for partial-day absences, the application of § 541.118(a)(5) to the public sector is arbitrary and capricious. I conclude that § 541.118(a)(5) is invalid as applied to the public sector.

Construing § 541.118(a)(5) to be invalid as applied to the public sector vindicates two corollary principles of statutory construction that " 'every reasonable construction must be resorted to, in order to *save a statute* from unconstitutionality,' " *Rust v. Sullivan*, 500 U.S. 173, 190, 111 S.Ct. 1759, 1771, 114 L.Ed.2d 233 (1991) (quoting *Edward J. De-Bartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) and adding emphasis) and " 'a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubt on that score.' " *Rust*, 500 U.S. at 191, 111 S.Ct. at 1771 (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 659, 60 L.Ed. 1061 (1916)). *See also Batanic*, 12 F.3d at 666. The state defendants contend persuasively that interfering with the states' ability to decide how to discipline employees who violate rules promoting public accountability would raise a serious constitutional issue.

The state defendants argue that if the FLSA is read as reflecting Congress's intent to apply the disciplinary suspension aspect of the salary basis test to state and local governments, to that extent, the statute is an unconstitutional violation of the guarantee clause because it undermines the public accountability of state governments, the bedrock upon which the states ground their gov-

erning authority. The clause provides in pertinent part: "The United States shall guarantee to every State in this Union a Republican Form of Government...." Many courts have held the clause nonjusticiable. *See, e.g., Risser v. Thompson*, 930 F.2d 549, 552 (7th Cir.) (rejecting a challenge to Wisconsin's partial-veto scheme as violative of the guarantee clause), *cert. denied,* —— U.S. ——, 112 S.Ct. 180, 116 L.Ed.2d 142 (1991). However, in two recent cases the Supreme Court has suggested that this long-held view of the nonjusticiability of the clause may be overstated, particularly when the claim under the clause does not present a political question (as was the case in *Risser* ). *New York v. United States*, —— U.S. ——, ——, 112 S.Ct. 2408, 2433, 120 L.Ed.2d 120 (1992) (citing among others, Merritt, 88 Colum.L.Rev. 70–78); *Gregory v. Ashcroft*, 501 U.S. 452, 462–63, 111 S.Ct. 2395, 2402, 115 L.Ed.2d 410 (1991). Prof. Merritt's thoughtful discussion of the guarantee clause supports the argument advanced by the state defendants that the clause is not the dead letter it is often assumed to be; rather, it supplies the substantive content the Tenth Amendment lacks by setting out in affirmative language the federal government's promise "to secure each of the states the autonomy necessary to maintain a republican form of government" and by providing "an essential constitutional limit on federal interference with state autonomy." 88 Colum.L.Rev. at 22–23. "The guarantee clause, therefore, promises each state a government based on popular control." *Id.* at 25. The state defendants' guarantee clause argument presents a genuine constitutional question. It is not an argument foreclosed by the decision in *Garcia*, 469 U.S. 528, 105 S.Ct. 1005, because it was never raised in that case.

In *Rust*, 500 U.S. at 191, 111 S.Ct. at 1771, the Supreme Court recognized that it is legitimate not to reach constitutional questions that can be avoided through choices in statutory construction. The Court recognizes another principle of statutory construction that avoids unnecessary adjudication of the Tenth Amendment and guarantee clause issues: when congressional action upsets the usual constitutional balance of state and federal powers, " 'it is incumbent upon the federal

courts to be certain of Congress' intent before finding that federal law overrides'" this balance. *Gregory v. Ashcroft*, 501 U.S. at 460, 111 S.Ct. at 2401 (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). Because *Garcia* "left primarily to the political process the protection of the States against intrusive exercises of Congress' Commerce Clause powers, [the courts] must be absolutely certain that Congress intended such an exercise." *Id.* at 464, 111 S.Ct. at 2403. The state defendants maintain and the federal defendants agree that when Congress extended the FLSA to public employees, it was thinking primarily in terms of minimum wage requirements and never considered the effect a regulation such as the salary basis test would have on the already complex pay and leave systems of public employment. When it is clear, as the federal defendants concede, that Congress had no intention of requiring state and local governments to choose between the managerial exemption and their public accountability principles, it becomes inappropriate to interpret the FLSA to require application of the disciplinary provisions of the salary basis test. Doing so would be a distinct expansion of an already significant intrusion into state sovereignty, *Garcia*, 469 U.S. at 557–79, 105 S.Ct. at 1021–32 (Powell, J., dissenting) and at 580–89, 105 S.Ct. at 1033–37 (O'Connor, J., dissenting). Moreover, it is an unnecessary expansion.

Nothing in the salary basis test is essential to an effective extension of the FLSA to government workers. Indeed, the United States Office of Personnel Management does not use either salary or the salary basis test to determine executive, administrative and professional exemptions under the FLSA for any federal employees other than congressional employees, employees of the United States Postal System, the Tennessee Valley Authority, the Postal Rate Commission and the Library of Congress. Instead, it makes the determination according to grade level and position classification. 57 Fed.Reg. 37667. It is important to keep in mind that the salary basis test is only a tool for implementing the FLSA, not a part of the substantive law of the FLSA itself. This fact makes

it all the more unlikely that when Congress extended the FLSA in 1974, it did so with the intent to apply the existing salary basis test to state and local governmental workers. In the absence of any clear statement by Congress that it intended the salary basis test to be applied to state and local governments as part of the expansion of FLSA in 1974 or 1985, *Ashcroft* requires that such a choice not be assumed and that regulations requiring the application of such tests be invalidated.

### E. Retaliation by State Defendants

■ Pinning down plaintiffs' theory of retaliation is not easy. Plaintiffs make a number of allegations in their briefs, ranging from references to statements made in private discussions by persons not party to this lawsuit to a theory that defendants

> retaliated against the Plaintiffs in violation of Section 215(A)(3) of the FLSA by creating a system of position classifications which establish exempt FLSA status as a precondition to qualifying for and retaining particular civil service classifications and, thereafter, using this system as a basis for threatening Plaintiffs with negative consequences in the form of downward reclassification if they prevail in this action.

Plaintiffs' reply brief, dkt. # 202, at 3. Despite numerous allegations in their briefs, plaintiffs proposed as facts only the substance of Judith Burke's affidavit and certain statements made by defendants' counsel during the course of this litigation. Therefore, I will confine this discussion to the theory that is supported by factual proposals: that the affidavit and defendants' counsel's comments constituted an actionable threat of retaliation against plaintiffs for commencing this lawsuit.

Plaintiffs' theory does not withstand close scrutiny. A review of the Burke affidavit and the statements of defendants' counsel reveals that they are nothing more than a straightforward explanation of their authors' views of the adverse consequences that plaintiffs might suffer if they succeeded in proving to the court that they were misclassified for their present positions. At the time the statements were made, the operative com-

plaint in this case contained plaintiffs' allegations that their job duties did not meet the prerequisites for exemption from the FLSA. Had plaintiffs continued to pursue this theory, they might have proven that at least some of them were performing jobs with duties that did not justify an exemption from the FLSA. Had this happened, it would have been necessary to re-evaluate the job classifications. Whenever a re-evaluation of a job is undertaken, the possibility exists that the job will have to be downgraded or its classification changed. Telling prospective plaintiffs about this possibility is hardly a threat; it is a statement of reality.

In her affidavit, Judith Burke explained that some jobs presently held by plaintiffs make exempt status a precondition to retaining a particular civil service classification and that if plaintiffs were to lose their exempt status as a result of this lawsuit, they might not be eligible to retain their jobs. In response to this affidavit, plaintiffs assert that when defendants set up these jobs and made exempt status a condition, they were implementing a scheme to provide for downward classification in the event employees were to vindicate their rights under the FLSA. In reminding plaintiffs of this possibility, plaintiffs assert, defendants were retaliating against plaintiffs for the filing of this lawsuit. Interesting though this particular challenge might be, plaintiffs waived their right to pursue it in return for defendants' agreement not to challenge the application of a three-year period of recovery.

In short, I can find no merit in plaintiffs' theory of retaliation. Defendants are entitled to summary judgment on this claim.

F. *Employees Legro, Peronto and Olson*

It is undisputed that the reductions in pay for Larry Legro and Thomas Peronto were either inadvertent or not true reductions. The treatment of these two employees was not part of a pattern of inadmissible reduction and it did not convert them to nonexempt employees.

As to Karen Olson, defendants concede they may have erred in conditioning her ability to work at home on her waiver of her rights under the FLSA. If so, that is a separate violation independent of the claims raised in this lawsuit. Olson's treatment does not implicate any rights of the other plaintiffs or support any of the issues in dispute in this suit.

## ORDER

IT IS ORDERED that the motion for summary judgment of defendants Robert Reich and the United States Department of Labor is GRANTED; the plaintiffs' motion for partial summary judgment on liability is DENIED; and the state defendants' motion for summary judgment is GRANTED in all respects. The clerk of court is directed to enter judgment for defendants and close this case.